## LEWYT CORPORATION v. HEALTH–MOR, Inc., et al.

### No. 47 C 1518.

United States District Court
N. D. Illinois, E. D.

April 13, 1949.

Chas. W. Hills, Chicago, Ill., for plaintiff.

Chas. F. Short, Jr., Howard A. Brundage, Benton Baker, Chicago, Ill., for defendants.

HOLLY, District Judge.

This is an action by plaintiff for a declaratory judgment to determine the validity of patent No. 2,198,568 issued to E. H. Yonkers, Jr., April 23, 1940, and patent No. 2,280,495 issued to E. F. Martinet, April 21, 1942. The complaint requested also the determination of the validity of another patent to Martinet, and included a charge of unfair competition but plaintiff has dismissed as to this charge and as defendant at the trial agreed that plaintiff's product did not infringe any of the claims of the other Martinet patent that patent was withdrawn from the action. Defendant Health-Mor filed a counter claim charging unfair competition.

The patents above mentioned covered alleged improvements in vacuum cleaners. Defendant Yonkers is the owner of Patent No. 2,198,568 under which Health-Mor has an exclusive license. Health-Mor is the owner of the Martinet patent in suit and is selling vacuum cleaners embodying the two patents, the machine being produced for it by a manufacturing concern. Plaintiff is manufacturing a cleaner which defendants contend infringes claims 2, 4, 7 and 8 of the Yonkers patent and claims 1 and 2 of the Martinet patent. Defendant Health-Mor's counter claim charge of unfair competition is based upon certain advertising of plaintiff and alleged "raiding" defendant's distribution organization.

Vacuum cleaners of various sorts have been on the market for a long time. The first in use, known as the "stick type" consists of a motor driven suction fan mounted on wheels and exhausting into a cloth bag attached to the stick. As the appliance is pushed over the floor the dirt laden air is sucked into the bag through an opening arranged for that purpose. The dirt remains and the air escapes through the pores of the bag. The next form is known as the tank type which consists of a cylinder mounted on runners which lies on the floor, having inside a motor driven exhaust fan and a cloth bag. As in the stick type the dirt laden air is sucked through a hose into the bag, the dirt remains and the air escapes through the pores of the bag. In both these types the bags must be emptied by the user, and a disadvantage of both is that a considerable amount of dirt adheres to the cloth and the bag must be cleaned frequently, a disagreeable task, or the dirt adhering to the sides will prevent the elimination of air and lessen the efficiency of the cleaner.

The third type known as the canister type appears not to have been marketed, at least to any considerable extent, until defendant Health-Mor commenced to sell it in 1937. It manufactured and sold a large number of the devices until the war stopped its operations in 1941. After the war it resumed operations and had sold, up to the time of trial, 150,000.

Plaintiff appeared on the field in competition with Health-Mor about July, 1947.

Prior to that time it had manufactured and sold, sometimes engineered, various forms of equipment such as room air conditioning units, telephone switch boards, radar equipment, etc.

The canister type cleaner which both plaintiff and Health-Mor sell consists of a cylindrical dirt receiver shaped like a bucket or pail. In construction and appearance plaintiff's and Health-Mor cleaners are quite similar but there are certain differences which will be noted later.

Yonkers in his specifications states that his objects were to construct a filter which tends to clean itself and wherein the main body of the dirt is not sucked up against the filter surface, with the result that the filter remains in a clean condition; also to produce a filter medium more efficient than fabric in that a greater surface is accessible to the passage of air and with air passages so fine as to prevent any but the finest dust from passing through. He desired also a filtering medium so cheap and so readily replaceable as to render the frequent changes of the filter easy and cheap.

To accomplish his purpose he devised a form of construction consisting of a smooth surfaced porous paper filter, conical in form, attached to the rim of the dirt receptacle and extending downwardly into it. To prevent breakage of the paper filter he provided a perforated metal cone also attached to the rim of the receptacle extending downwardly within the paper cone.

The receptacle, he stated, had an opening on the side for an air inlet and the air sucked in is given a rotary motion by means of a nozzle which is so designed that no direct blast of air impinges on the filter element but a flat stream travels around and substantially parallel with the filter thus preventing solid particles travelling at a high rate of speed from tearing the paper. The whirling motion of the air around the filter, separates the light from the heavy particles, the dirt settles in the receptacle while the air passes through the filter and the perforated screen and out of the machine through openings provided for that purpose.

The machine is provided of course with the necessary motor and fan and its general construction is shown by the figure below:

April 23, 1940. E. H. YONKERS, JR 2,198,568

SUCTION CLEANER

Filed Sept. 8, 1937

Fig. 1

Fig. 2

Inventor:
Edward H. Yonkers, Jr.

By: Robert L. Kahn Atty.

The paper filter is indicated by No. 60, the perforated metal screen by No. 55, the opening into the pan by No. 11 and the nozzle by No. 12.

The principle feature of his design as I gather it from the specifications are (1) the use of paper as a filtering medium, (2) the conical form of the filter, (3) a perforated metal screen within the cone to prevent the paper from being ruptured by the air suction, and (4) a nozzle so arranged that no direct blast of air impinges upon the filter but takes a circular path around and generally parallel to the surface of the filter.

Defendant charges that plaintiff has infringed claims 2, 4, 7 and 8 of the patent. These claims read as follows:

2. In a suction cleaner, a housing having a dust compartment in the bottom thereof, a generally conical air filter forming the top cover of said compartment with the apex of the cone extending inwardly toward the bottom of said compartment, said filter comprising a perforated supporting member and a flexible filtering member against said supporting member, an intake connection into said dust compartment below said filter, said intake connection terminating in a nozzle for discharging dirt-laden air adjacent to and parallel with the filter surface and an exhaust connection above said filter.

4. In a suction cleaner, a housing having a dust compartment in the bottom thereof, a generally conical fragile filter forming a cover for at least part of said compartment and extending down therein, a perforated member above said filter for supporting and maintaining said filter against collapse, means for generating a suction above said filter, an air intake for said housing below said filter, and means for guiding the incoming dirt-laden air so that the air takes a generally circular path generally parallel to the filter surface and adjacent thereto.

7. In a suction cleaner, a housing having a dust compartment in the bottom thereof, at least a portion of the side wall of which housing compartment is cylindrical in form, a generally conical fragile filter forming a cover for the cylindrical portion

of said compartment and extending down therein in coaxial relation therewith, a perforated member above said filter for supporting and maintaining said filter against collapse, means for generating a suction above said filter, an air intake for said housing below said filter, and means for guiding the incoming dirt-laden air so that the air takes a generally circular path generally parallel to the cylindrically coaxially housed filter and adjacent thereto.

8. In a suction cleaner, the combination of an opentopped cylindrical dust receptacle having an annular portion adapted to receive and support a filter element, a generally conical flexible filter element marginally supported upon said annular receptacle portion against downward movement, and a removable group constituting a cover for said compartment and a retainer for holding said filter in said recited association with said dust compartment, said group including a motor-driven suction-generating means and a perforated generally conical filter support bearing upon the receptacle-supported marginal portion of said filter element, complementarily fitted within the filter element proper and bracing same against collapse under differential air pressure induced by said suction-generating means.

Yonkers in his claims except the 8th does not state whether it is the combination that constitutes invention or whether it is some element of the combination that is new. In the argument of counsel for defendant it appears at times that they are claiming patentability for the combination, at other times some feature of the combination such as the conical shape of the filter, or the supporting member or the device for creating a whirling motion of the air in the pan. The claims 2, 4 and 7 might well be held invalid, it seems to me, for the failure of Yonkers to specify just what it was that he was claiming. I do not find anything new in the elements of the device nor, in my opinion, is the combination patentable.

The use of a paper filter is not new. It was conceived by Upton and is shown in his patent No. 1,978,203 issued January 13, 1931. His was the canister type of cleaner and to separate the dust from the air he

provided a paper cover for the pail stating that though any textile or other suitable covering might be used, paper was preferred as after use it might be conveniently destroyed and replaced inexpensively.

The conical form of filter is shown in Korritke patent No. 1,921,085 issued August 8, 1933. While Korritke's claims are limited to other matters, his drawings show a filter in the shape of a truncated cone and his specifications state the use of a filtering bag "which may consist of two bags of different kinds of fabric." Plaintiff's filtering bag is exactly the same as that suggested by Korritke. If there is novelty in Yonkers over Korritke it is in using a perforated metal supporting instead of two filtering bags, and that plaintiff has not copied.

The remaining distinctive feature of Yonkers' patent is the nozzle and its arrangement with reference to the filter. Neither Health-Mor nor plaintiff use the particular form of nozzle shown in the Yonkers drawing. Each uses an opening from the hose into the pan or pail so shaped as to impart a whirling rotary motion to the air. The operation of defendant's and plaintiff's machines in open court showed the dust laden air revolving around the outer surface of the pan, and not close to the surface of the filter so as to clean it. The shape of the opening into the pan or pail used by Health-Mor and plaintiff is the same as that in patent No. 1,100,575 issued to one J. H. Kirby which shows a tangentially arranged intake which causes the air to have a whirling motion inside the receptacle.

 In my opinion each of the features for which Yonkers claims invention is old. Any one having in mind the designing of a vacuum cleaner and looking over the prior art would find each of the elements of the Yonkers patent, and the combination of them to produce the Yonkers cleaner did not constitute invention. Merely bringing old devices into juxtaposition and there allowing each to work out its own effect without the production of something novel is not invention. Hailes v. Van Warmer, 20 Wall. 353, 368, 22 L.Ed. 241; Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196; Powers-Kennedy Co. v. Concrete Co., 282 U.S. 172, 186, 51 S.Ct. 95, 75 L.Ed. 278.

Coming now to the Martinet patent, claims 1 and 2 of which defendants say are infringed by plaintiff's structure, Claim 1 reads as follows:

1. Suction cleaner construction adapted selectively for use as a cleaner without a concentrated air exhaust blast and as a blower with a concentrated air exhaust blast, including a motor, a fan, a housing shell enclosing the motor and fan, walls forming fan chamber means within the housing shell and having an axial restricted outlet neck, walls forming exhaust passages leading from said fan chamber means to said restricted outlet neck, removable closure means for the housing normally covering said outlet neck, walls forming exhaust passages communicating with said outlet neck within said housing and terminating in circumferentially arranged opening in said housing of greatly increased combined area with respect to said restricted outlet neck.

As stated in defendant's brief, "claim 2 is identical with claim 1 except that the 'exhaust passages' are defined as of 'varying areas.' "

Martinet had two objects in mind in designing his cleaner, first to lessen the noise and to cool the motor by means of passing the air flowing through the cleaner over and around it before it passed through the fan and second to blow small particles of chemical crystals or other reagents into the air to kill moths or for other purposes. Other constructions had been designed for cooling the motor and blowing, but they required either the removal of the dust bag and substitution of a blower, or they discharged a concentrated blast which he desired to avoid as then the crystals would be blown out without first being ground up as he desired.

 The means by which he accomplished his purpose are rather difficult to describe and it seems to me unnecessary to say more than that I have compared the Martinet design with that of Schellens patent No. 2,172,180 and find that the difference between the two are slight, they are so

194

nearly alike that I must hold that Schellens anticipated Martinet.

There remains to be considered defendants' claim of unfair competition. When plaintiff entered into the business of producing and selling vacuum cleaners it opened an extensive advertising campaign as Health-Mor had done before it. In this advertising it proclaimed its product as new and revolutionary. As Health-Mor was in the field before plaintiff this statement was not quite accurate. But our law allows puffing and exaggeration (and advertisers usually take full advantage of it) and I do not think plaintiff went beyond the bounds permitted by law. It did not represent its cleaner as that produced by Health-Mor nor do or say anything to induce intending purchasers to think its product was that of Health-Mor.

As to the alleged "raiding" of Health-Mor sales force I find no evidence to sustain the charge that plaintiff attempted to induce any employee of Health-Mor to break a contract with that company.

Plaintiff is entitled to the relief prayed in its complaint, (except as to the charge of unfair competition which it has withdrawn) and defendant's counter claim must be dismissed.

The parties may prepare drafts of findings of fact and conclusions of law and submit them to the Court.

Judge.