**SMITH–VICTOR CORPORATION,**
Plaintiff,

v.

**SYLVANIA ELECTRIC PRODUCTS,**
**INC., Defendant.**

**No. 61 C 331.**

United States District Court
N. D. Illinois, E. D.

Feb. 1, 1965.

---

See also, 242 F.Supp. 315.

George E. Hale, Wilson & McIlvaine, Chicago, Ill., for plaintiff.

Thomas R. Mulroy, Hopkins, Sutter, Owen, Mulroy, Wentz & Davis, Chicago, Ill., for defendant.

DECKER, District Judge.

The facts underlying the plaintiff's amended complaint can be stated generally. The plaintiff, one of several manufacturers, made and sold what is called a "bar light" (or "light bar") which is used, primarily by the amateur, as a source of illumination for taking motion pictures; plaintiff's "bar light" consists of a length of hollow metal bar on which are mounted two or four incandescent photoflood lamps of 300 to 375 watts. In 1960, the defendant, Sylvania, introduced its "Sun Gun," which is used for the same purpose as the plaintiff's "bar light." The "Sun Gun" is a unit resembling a traditional press-type flash gun, which provides light from a single halogen light source.

Plaintiff alleges that, as a result of certain actions taken by the defendant in the marketing of its "Sun Gun," to be described more fully below, its sales diminished significantly so that it sustained damages.

In general, the amended complaint alleges the following:

Count I—"In the promotion and sale of said product, Sylvania made false claims for its 'sun gun' and disparaged the products of the plaintiff by said false statements."

Count II—The advertisements of Sylvania stated that the "Sun Gun" provided as much light as the plaintiff's bar light; that this statement was untrue and thereby disparaged the plaintiff's product by indicating that it produced no more light than the smaller "Sun Gun."

Count III—The false advertising violated an Illinois criminal statute prohibiting untrue, deceptive or fraudulent advertisements (Ill.Rev.Stat.1959, ch. 38 § 249a), and violated the Federal Trade Commission Act, 15 U.S.C. § 45(a).

Count IV—The defendant violated the anti-trust laws of the United States by monopolizing the relevant market through the conduct set out in Counts I and II and by a course of acquisition which lessened competition substantially.

Count V—The defendant violated the Lanham Act, Section 43(a) by representing falsely the amount of light which its product produced.

General, and drastic, loss of business has been alleged; loss of specific sales has not been alleged.

This case was reassigned from Judge Robson to this Court. While he had the case, Judge Robson had occasion to pass on the four counts of the original complaint, which are represented by the first four counts of the amended complaint. On December 12, 1961, Judge Robson denied the defendant's motions for summary judgment on Counts I and II; he held that the counts stated claims upon which relief could be granted, but he stated that the motion for summary judgment could be renewed if further discovery showed that no genuine issue of fact existed. Discovery procedures have been pursued, and summary judgment can now be reconsidered.

Judge Robson granted defendant's motion dismissing Count III. In regard to

the portion which alleged a claim based on the violation of an Illinois criminal statute, Ill.Rev.Stat.1959, ch. 38 § 249a, he held that the claim must be dismissed because, (a) there is no provision for civil liability in the statute, and (b) no civil liability to this plaintiff could be implied from the statute because the class of persons which the statute protected was consumers and not competitors. See Heimgaertner v. Benjamin Mfg. Co., 6 Ill.2d 152, 155, 128 N.E.2d 691 (1955).

As to the claim based upon Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, Judge Robson ruled that a private cause of action could not be brought; he relied upon Moore v. N. Y. Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), and Samson Crane Co. v. Union Nat. Sales, 87 F. Supp. 218 (D.Mass.1949).

■ I feel that Judge Robson's ruling was correct and can see no reason to disturb it; therefore, Count III of the amended complaint must be dismissed.

Count IV of the original complaint was also dismissed by Judge Robson; this count has been amended significantly and will be discussed below.

The case is now before me on plaintiff's motion for summary judgment as to liability on Counts I, II and V, as well as defendant's motion for summary judgment on Counts I, II, IV and V.

*Counts I, II and V.*

Counts I, II and V depend upon the same facts and can be discussed together in considering defendant's motion for summary judgment.

The following facts are uncontradicted:

1. Equal light—The following are representative of the defendant's advertising and press releases:

"[S]ame light in the area being photographed as an 18-inch light bar containing R–30 photoflood lamps."

"[S]ame usable light as that obtained from four photoflood lamps."

"[F]ar brighter than any lamp ever before offered for home movies."

"The Sun Gun is bright. With one quartz iodine lamp it produces 35,000 center-beam candlepower. This is the equivalent of the four R–30 photoflood generally used on a movie light bar."

2. Constancy of light output—The defendant has claimed:

(a) That the light output of its light never changed throughout the life of the lamp.

(b) That a photoflood light output declines as use of the bulb continues.

(c) That the defendant's bulb does not blacken or go dim with age as does a photoflood bulb.

3. Beam coverage—The defendant claimed:

"The beam * * * floods an area greater than the coverage of the widest wide angle lens."

4. Rated life—The following are representative of the defendant's advertising and press releases:

"[It] has a rated life of three times that of a conventional 'R' type Movie Light (like the R–30)."

"The '*Sun Gun*' lamp will last much longer than conventional movie lights. Life is rated, officially, at 10 hours (as against 3 to 4 hours for conventional movie lights), but that figure is conservative. We have lights on our laboratory test stands right now that have been burning steadily for twenty hours and more."

5. General statements—The following are representative of the general statements of comparison which the defendant made concerning the Sun Gun and the light bar:

"Does away with bulky bar lights forever!"

"No Bar! No Bulk! No Bother!"

"Its ease-of-use would make it extremely popular with women who wished to photograph their families indoors but who found a light bar too hard to handle * * *."

"[D]oes the work of a multiple-light bar * * * and does it easier and better."

6. At no time did the defendant mention any manufacturer of light bars by name; the only references were to light bars in general.

7. Manufacturers other than the plaintiff make and sell light bars; manufacturers other than the defendant make and sell single source lights.

8. The plaintiff has not alleged or shown that any specific customers stopped buying its product as the result of the defendant's advertising and sales promotion.

Certain facts have not been established, but for the purposes of the defendant's motion, the Court will assume that the following could be established by the plaintiff:

1. The Sun Gun does not give light equal to the bar light.

2. The center-beam candlepower of the Sun Gun is less than 35,000.

3. The light output of the Sun Gun does not maintain a constancy over the life of the bulb.

4. The beam coverage of the Sun Gun does not give coverage greater than the coverage of the widest wide angle lens.

5. The rated life of the Sun Gun lamp is not more than two times that of the light bar bulb.

*Common Law Disparagement.*

The essence of the plaintiff's claim for disparagement is stated in its reply brief (p. 35):

"[The] defendant's factual advertising comparing the Sun Gun with the bar light disparaged the bar light, in that the Sun Gun was equated with the bar light on matters such as light output, when in fact the Sun Gun gave only half the light output of the typical bar light. The bar light was lowered to the quality (capacity) level of the Sun Gun, thereby disparaging the bar light."

In order to bring a suit for disparagement, the plaintiff must allege and prove that (a) the statements referred to the plaintiff by name or the public knew that the statements referred to the plaintiff, and (b) statements were made by the defendant which disparaged the plaintiff or its product. National Refining Co. v. Benzo Gas Motor Fuel Co., 20 F.2d 763, 767, 55 A.L.R. 406 (8th Cir. 1927).

(a) The complaint does not allege, and the facts adduced in connection with the motion for summary judgment do not show, that the defendant ever mentioned the plaintiff by name; therefore, the plaintiff would have to show that the references to light bars were believed to refer to its light bars by members of the public exposed to the defendant's statements. However, I cannot hold, in considering the motion for summary judgment, that there is no issue of fact in this regard.

(b) Nevertheless, I can come to some conclusion concerning the disparaging character of the defendant's statements on the basis of the materials presented in the motions for summary judgment. The Court, in National Refining Co. v. Benzo Gas Motor Fuel Co., supra, at page 769, analyzed the cases on this subject and found that there were three classes of statements:

(1) Those which referred to the rival's goods and imputed to the rival dishonesty or reprehensible business methods in connection with the goods; here it is not necessary to allege special damages since some damage can be presumed;

(2) Those where the statement concerns the quality of the goods without attributing dishonest or reprehensible business methods to the manufacturer, in which case special damages had to be alleged in order to prove that the statements were, in fact, damaging; and

(3) "Those where the alleged libelous statements amount to no more than assertions by one tradesman that his goods are superior to those of his rival. Here no recovery can be had, though the state-

**308**

ments are false and malicious, and though special damage is alleged."

The defendant's statements clearly do not fall within (1). The defendant argues that the claim under (2) cannot be sustained because special damages are not alleged; the only damage alleged is a drastic reduction in the plaintiff's sales, and the plaintiff does not make allegations which connect the loss of business to the defendant's statements. Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories, 17 F.2d 255, 261, 52 A.L.R. 1187 (8th Cir. 1926); Fowler v. Curtis Publishing Co., 86 U.S.App.D.C. 349, 182 F.2d 377, 379 (1950).

■ But even if special damages were properly alleged, the defendant's motion for summary judgment would have to be granted. The statements made fall within category (3). All that the defendant did was to claim equivalence for its product; even admitting, and I must for the purposes of this motion, that the defendant's product is inferior to the plaintiff's product, an unduly favorable comparison is not a ground for damages. Prosser, Torts, 949 (3d ed.). Nor does calling the plaintiff's product "bulky" or "hard to handle" raise these advertisements to the level of an illegal attack on the plaintiff or its product. Compare Black & Yates v. Mahogany Ass'n., 129 F.2d 227, 148 A.L.R. 841 (3rd Cir. 1942).

As a matter of law, the defendant's statements do not give rise to a claim for common law disparagement. The defendant's motion for summary judgment regarding the portions of Counts I and II that allege disparagement must be granted.

*False Advertising and the Lanham Act.*

The defendant sets up two defenses to false advertising. It contends that whatever advertising was done was within the puffing privilege. Additionally, the defendant argues that there is no action unless there was palming off, which is not the case here.

A. Puffing—To say that a merchant's advertisements are puffing, states, in effect, that no cause of action can be based upon the representations. As Dean Prosser states:

"The 'puffing' rule amounts to a seller's privilege to lie his head off, so long as he says nothing specific, on the theory that no reasonable man would believe him, or that no reasonable man would be influenced by such talk." Prosser, Torts, 739 (3d ed.).

Plaintiff claims that the defendant's statements were not within the privilege because some of them were very specific, especially the claims that the defendant's product produced 35,000 candlepower and lasted ten hours. For the purposes of the defendant's motion, it must be assumed that these statements are untrue.

■ Although the parties tend, at times, to combine false advertising with disparagement, I feel that a line can be drawn between the claims put forth which give rise to one or the other. In disparagement, puffing involves a comparison between the two products; as long as the comparison attempts primarily to enhance the quality of the advertiser's product without being unduly critical about the other's product, there can be no disparagement. On the other hand, false advertisement occurs when the advertiser makes statements about its own product which are false.

In the case of false advertisement, puffing must be analyzed apart from who may sue; standing to sue is another matter.

■■ Both parties agree that advertising which merely states in general terms that one product is superior is not actionable. Statements such as "far brighter than any lamp ever before offered for home movies," and "the beam floods an area greater than the coverage of the widest wide angle lens," fall in this category. Lewyt Corp. v. Health-Mor, 84 F.Supp. 189 (N.D.Ill.1949), ("New and Revolutionary"); Anheuser-Busch v. DuBois Brewing Co., 175 F.2d 370 (3d Cir. 1949), ("original" and "comparable in quality").

■ Nevertheless, statements which ascribe absolute qualities to the defend-

ant's product, such as 35,000 candlepower and 10-hour life, could give rise to a legal liability if they were not true. These exceed the traditional bounds of puffing.

B. Standing to sue—Assuming that advertisements were false, and that they were not covered by the puffing privilege, who has standing to bring suit must still be determined.

(1) Common law—The courts had to face this question under the common law and came to the conclusion that a *direct* injury was required for a person to obtain damages or an injunction from the court. The plaintiff cites Restatement of Torts, Section 761, for the proposition that a competitor can bring suit. This view is not supported by the cases which apply common law.

 In an action for false advertising, a plaintiff does not have standing to sue unless the defendant has palmed off his goods as those of the plaintiff, or unless the plaintiff has a complete monopoly of the goods involved, so that injury can be readily inferred. American Washboard Co. v. Saginaw Mfg. Co., 103 F. 281, 50 L.R.A. 609 (6th Cir. 1900), and Mosler Safe Co. v. Ely-Norris Co., 273 U.S. 132, 47 S.Ct. 314, 71 L.Ed. 578 (1927).

The crux of the reasoning in these two opinions is that, in an open market, it is generally impossible for the plaintiff to prove that a customer, who may have been diverted from the plaintiff and to the defendant by means of false advertising, would have bought the goods of the plaintiff if the advertisements of the defendant had been truthful; in other words, the plaintiff cannot show that he has been damaged. As Mr. Justice Holmes said (273 U.S. 132, 134, 47 S.Ct. 314):

"It is consistent with every allegation in the bill and the defendant in argument asserted it to be a fact, that there are other safes with explosion chambers beside that for which the plaintiff has a patent. The defendant is charged only with representing that its safes had 'an' explosion chamber, which, so far as appears, it had a perfect right to do if the representation was true. If on the other hand the representation was false as it is alleged sometimes to have been, there is nothing to show that customers had they known the facts would have gone to the plaintiff rather than to other competitors in the market, or to lay a foundation for the claim for a loss of sales."

Mosler Safe Co. v. Ely-Norris Safe Co., supra, remains the common law today. Jack Daniel Distillery v. Hoffman Distilling Co., 298 F.2d 606 (6th Cir. 1962); Chamberlain v. Columbia Pictures Corp., 186 F.2d 923 (9th Cir. 1951); Lewyt Corp. v. Health-Mor, 84 F.Supp. 189 (N. D.Ill.1949); Developments in the Law—Competitive Torts, 77 Harv.L.Rev. 888, 905–07 (1964).

 Clearly, Sylvania made every effort to distinguish its product from the plaintiff's product; therefore, there can be no palming off. Furthermore, since there are many other producers of light bars and even of devices similar to the Sun Gun, the plaintiff could not show that it had been damaged by the defendant's false advertising. Mosler Safe Co. v. Ely-Norris Co., supra.

The defendant's motion for summary judgment regarding the portions of Counts I and II that allege false advertising must be granted. As the result of this disposition, the plaintiff's cross motion for summary judgment on Counts I and II must be denied.

(2) Lanham Act—The question remains whether the Lanham Act, Section 43(a), 15 U.S.C. § 1125(a)[1] gives the

---

1. "(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to

plaintiff standing to bring suit for pecuniary loss.

The defendant argues that this Count must be dismissed:

(a) Because the Lanham Act refers only to trademarks, and no trademark is involved;

(b) Even if a trademark is not necessary, Section 43(a), when read in connection with the legislative history, retained the common law requirement of palming off; and

(c) Even if Section 43(a) is read literally, insubstantial exaggeration, analogous to puffing, is not included within the term false description.

I have already determined that several of the defendant's statements, such as the claim that the Sun Gun produced 35,000 candlepower, are not insubstantial exaggeration; since these statements of fact must be considered as untrue for the purposes of this motion, exaggeration is not a defense to this action.

■ The plain words of the statute include unfair competition without a trademark annexed. The legislative history cited by the defendant on this point does not negative a federal cause of action for unfair competition. In fact, Section 45 of the Lanham Act, 15 U.S.C. § 1127, states that:

"The intent of this chapter is to regulate commerce within the control of Congress * * * to protect persons engaged in such commerce against unfair competition * * *."

I hold that a cause of action is so provided.

The most difficult point is whether the common law requirement of palming off has been incorporated into Section 43(a). On this point, the courts are in conflict. Compare Chamberlain v. Columbia Pictures Corp., supra, with L'Aiglon Apparel v. Lana Lobell, Inc., 214 F.2d 649 (3d Cir. 1954).

Section 43(a) does not refer to palming off or to false advertising about the plaintiff's product by the defendant; it does refer to the advertising which a person publishes concerning his own product. Defendant argues that several cases which support the plaintiff's position do so only in dicta, and that they should be restricted to their facts which provide an analogy to palming off. In these cases, L'Aiglon Apparel v. Lana Lobell, Inc., supra, and Zandelin v. Maxwell Bentley Mfg. Co., 197 F.Supp. 608 (S.D.N.Y. 1961), the defendants were misrepresenting their products as being identical to the plaintiffs' products; in fact, each alleged that a photograph of the plaintiffs' product was used by the defendants to advertise their products. Nevertheless, these fact situations analogous to palming off do not diminish the explication and reasoning which each opinion offers.

Furthermore, two cases cited by the parties are in point. In Gold Seal Co. v. Weeks, 129 F.Supp. 928 (D.C.D.C.1955), aff'd. S. C. Johnson & Son Inc. v. Gold Seal Co., 97 U.S.App.D.C. 282, 230 F.2d 832 (1956), cert. denied 352 U.S. 829, 77 S.Ct. 41, 1 L.Ed.2d 50 (1956), the plaintiff sought to register the trademark "Glass Wax" used in connection with a liquid cleaner for glass and metal; the compound contained no wax, and a competitor, which sold cleaning compounds containing wax, sought to enjoin the use of the word "wax" as false advertising and sought damages and an accounting as a result of the alleged false advertising; the Court upheld the cause of action under Section 43(a), but found that the evidence did not sustain an injunction nor damages. In Mutation Mink Breeders Ass'n. v. Lou Nierenberg Corp., 23 F.R.D. 155 (S.D.N.Y.1959), the plaintiffs, who raised and sold mink used to manufacture wearing apparel, brought suit against the defendant corporation which produced synthetic mink garments labeling them

---

any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is sit-

uated, or by any person who believes that he is or is likely to be damaged by the the use of any such false description or representation."

"Normink;" the complaint brought under Section 43(a) was held sufficient to withstand motions to dismiss and for summary judgment. In both of these cases, the plaintiffs sought relief because the defendants represented their products as having qualities which the plaintiffs' had, but which the defendants' did not.

■ No decision in the Seventh Circuit binds me to follow one line of cases or the other. I must determine which interpretation of the statute is most reasonable. The plain language of the statute applies to a case such as the one at bar. Where the language of the provision is clear, and when that language is not inconsistent with other provisions of the statute, then the provision must be considered as it is written. Mandel Bros., Inc. v. Federal Trade Comm., 254 F.2d 18 (7th Cir. 1958), reversed on other grounds, 359 U.S. 385, 79 S.Ct. 818, 3 L. Ed.2d 893 (1959).

■ I agree with the Court in L'Aiglon, when it stated (214 F.2d 649, at 651):

"We find nothing in the legislative history of the Lanham Act to justify the view that this section is merely declarative of existing law. Indeed, because we find no ambiguity in the relevant language in the statute we would doubt the propriety of resort to legislative history even if that history suggested that Congress intended less than it said. It seems to us that Congress has defined a statutory civil wrong of false representation of goods in commerce and has given a broad class of suitors injured or likely to be injured by such wrong the right to relief in the federal courts. This statutory tort is defined in language which differentiates it in some particulars from similar wrongs which have developed and have become defined in the judge made law of unfair competition. Perhaps this statutory tort bears closest resemblance to the already noted tort of false advertising to the detriment of a competitor, as formulated by the American Law Institute out of materials of the evolving common law of unfair competition. See Torts Restatement, Section 761, supra. But however similar to or different from pre-existing law, here is a provision of a federal statute which, with clarity and precision adequate for judicial administration, creates and defines rights and duties and provides for their vindication in the federal courts."

The question remains whether Count V states adequately a claim for damages. This Count, after alleging that the defendant made false representations, recites the following:

"32. By reason of defendant's wrongful conduct plaintiff's sales have been drastically curtailed; its profits have been eliminated and its good will destroyed. Plaintiff's business has been rendered valueless.

"Wherefore plaintiff prays that damages may be awarded against Sylvania in the amount of $860,000."

The connection between the plaintiff's alleged damages and the defendant's alleged false representations is stated only generally.

A comparison between common law disparagement, common law false advertising, and Section 43(a) helps to determine what connection the plaintiff's loss must have with the advertising of the defendant.

■ To state a cause of action for common law disparagement, the plaintiff had to allege not only that the statements were disparaging, either *per se* or by reason of special damages, but also that the statements referred specifically to the plaintiff. National Refining Co. v. Benzo Gas Motor Fuel Co., 20 F.2d 763, at 767 (8th Cir. 1927). The connection had to be direct.

■ In common law false advertising, the nexus between the defendant's words and the plaintiff's alleged injury is much less obvious; thus, the common law

required the close connection of palming off.

■■■ The scope of Section 43(a) is much broader than the scope of common law false advertising; nevertheless, there must still be a connection between the advertisement and the damages claimed by the plaintiff. The tenuous connection between what one says about his own product and the injury to a competitor probably accounts for the reluctance of some courts to recognize a cause of action for false advertising which does not include palming off. See, e. g., Chamberlain v. Columbia Pictures Corp., 186 F.2d 923 (9th Cir. 1951).

Some of the cases in which the courts have applied Section 43(a) have drawn the distinction between a suit for an injunction and a suit for damages. In Parkway Baking Co. v. Freihofer Baking Co., 255 F.2d 641, 649 (3d Cir. 1958), Chief Judge Biggs said:

"In cases of injunction, however, there seems to be no requirement that purchasers actually be deceived, but only that the false advertisements have a tendency to deceive. This seems to be the result desired by Congress in that Section 43(a) confers a right of action upon any person who 'believes that he is or is likely to be damaged' by defendant's practices. While it would be going too far to read the requirement of customer reliance out of this section so far as damages are concerned, we believe that this is a recognition that, as with most equitable relief by way of injunction, Section 43(a) may be asserted upon a showing of likelihood of damage without awaiting the actuality. Weil, Protectibility of Trademark Values Against False Competitive Advertising, 44 Cal.L.Rev. 527 (1956); Derenberg, Federal Unfair Competition Law at the End of the Lanham Act; Prologue or Epilogue? 32 N.Y.U.L.Rev. 1029 (1957)."

See also, Note, Torts: Intentional Interference with Contract and Unfair Competition; False Advertising as a Basis for a Civil Action by a Competitor, 9 U.C.L.A. L.Rev. 719 (1962).

Regarding recovery of damages, the Court in Gold Seal said (129 F.Supp. 928, at 940):

"We also deny relief under Section 35 of the Lanham Act in the form of an accounting for profits and damages. Suffice it to say Johnson's attempt to analogize Section 43(a) to a libel action, making proof of actual damages unnecessary, is totally without support in law or reason. Pecuniary recovery must be individualized, loss of sales must be shown. Section 43(a) was to promote fair business dealings. It was not to provide a windfall to an overly eager competitor."

■■■ Thus, at trial, the plaintiff will have to prove not only that the advertisements were false, but also that they were relied upon by potential customers for home movie lighting equipment, as a substantial reason for making purchases. Furthermore, in order to recover damages, the plaintiff must prove that the alleged false advertising caused the plaintiff to lose sales which it otherwise would have made.

■■■ Whether the plaintiff is entitled to relief, and in what amount, are matters for trial. I hold that Count V meets the notice pleading requirements of Rule 8 (a), F.R.Civ.P.; and that the general demand for relief, alleging only loss of unspecified business, is sufficient so that a motion to dismiss cannot be granted. Furthermore, the statute does not indicate that Section 43(a) requires damages to be specifically alleged as special damages; for this reason, Rule 9(g), relating to the pleading of special damages, does not apply.

Plaintiff's cross motion for summary judgment on the issue of false advertising regarding Count V must also be denied; on the basis of the evidence presented concerning plaintiff's motion, it is clear that there are genuine issues as to material fact; for example, certain ad-

missions made by the defendant's personnel may be important evidence at trial, but I do not think that they establish conclusively that the advertising was false.

## Count IV.

The original Count IV, based solely on violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, was dismissed by Judge Robson on December 5, 1961. At that time, Judge Robson said:

"No facts are alleged to indicate either an intent on the part of the defendant to monopolize the trade, or the probability that defendant may achieve a monopoly."

Mackey v. Sears, Roebuck & Company, 237 F.2d 869 (7th Cir. 1956) was the basis for this ruling.

 Judge Robson granted leave to amend; the amended complaint is now before this Court. Amended Count IV, in general, alleges the following:

(a) The parties engage in interstate commerce.

(b) The defendant is a wholly-owned subsidiary of General Telephone and Electronics Corporation.

(c) General Telephone and Electronics Corporation has acquired many manufacturing businesses in many fields relating to electronics and to telephone service. Defendant was acquired by General Telephone in 1959; some of the assets acquired by General Telephone were transferred to Sylvania. Sylvania has also been acquiring other companies and the assets of other companies since 1936.

(d) The defendant has great wealth and market power.

(e) The plaintiff is a small family-owned enterprise.

(f) "Sylvania determined to employ its market power to destroy the plaintiff and other manufacturers of lighting equipment for amateur motion picture photographers."

(g) Four overt acts of the attempted monopolization are specifically mentioned: (1) the "Sun Gun" was designed and manufactured, (2) huge sums were spent advertising the "Sun Gun," (3) the advertising intentionally misrepresented the defendant's product and disparaged the plaintiff's product, and (4) the defendant reduced its prices sharply in the late summer of 1961 to clog the channels of distribution ahead of normal peak sales.

(h) "Defendant Sylvania's conduct was affected with a dangerous probability of success in achieving its intended monopoly. In fact, defendant Sylvania has succeeded in crippling its competitors and greatly reducing their sales. The course of conduct engaged in by defendant Sylvania has caused it to gather to itself a huge proportion of the market in lighting equipment for amateur motion picture photographers."

The amended complaint also alleges a new claim based upon Section 7 of the Clayton Act, 15 U.S.C. § 18, that "The acquisitions above described" emphasized defendant's wealth and economic power and resulted in a substantial lessening of competition.

Damages are alleged in the following manner:

"By reason of defendant's wrongful conduct plaintiff's sales have been drastically curtailed; its profits have been eliminated and its good will destroyed. Plaintiff's business has been rendered valueless."

The Count ends with a prayer for treble damages, attorneys' fees and divestiture.

A. Section 2 of the Sherman Act.[2]

Judge Learned Hand wrote: "In order to fall within § 2, the monopolist must have both the power to monopolize, and

---

**2.** "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding fifty thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court." 15 U.S.C. § 2.

the intent to monopolize." United States v. Aluminum Co. of America, 148 F.2d 416, 432 (2d Cir. 1945). The amended complaint does allege an intent to monopolize coupled with certain overt acts of the attempt; however, the allegations concerning the defendant's power to monopolize are stated in the broadest general manner. As Judge Robson said, supra, "No *facts* are alleged to indicate * * * the probability that defendant may achieve a monopoly." (Emphasis added.) The amended Count IV still does not provide facts to supplement the bare allegation that the defendant may achieve monopoly.

However, I still must face the problem of applying the liberal federal rules on notice pleading to this case. See F.R.C.P. 8. The view generally, 2 Moore, Federal Practice ¶8.17 [3] (2d ed. 1964), and in the Seventh Circuit, Sandidge v. Rogers, 256 F.2d 269 (1958), is that there are no special rules for anti-trust cases, but that Rule 8 of the Federal Rules of Civil Procedure applies as it is written.

All that is required of a complaint under Rule 8(a) is a statement of jurisdiction, a demand for relief, and "(2) a short and plain statement that the pleader is entitled to relief * * *." In John Walker & Sons v. Tampa Cigar Co., 197 F.2d 72, 73 (5th Cir. 1952), cited with approval in Sandidge v. Rogers, supra, the court said:

"It is also elementary that a complaint is not subject to dismissal unless it appears to a certainty that the plaintiff cannot possibly be entitled to relief under any set of facts which could be proved in support of its allegations."

I feel that it would serve no useful purpose to require the plaintiff to amend its complaint for another time; the present amended complaint gives the defendant notice of the substance of the wrong with which it is charged. Nevertheless, I also realize that discovery in anti-trust cases can be very expensive. For this reason, I feel that the scope of discovery must be limited initially.

On November 16, 1962, discovery under Count IV of the amended complaint was foreclosed by order of Judge Robson. Before I will allow discovery to be reopened, the parties must meet with me in a pre-trial conference. The first stage of discovery will be limited to determining whether the defendant controls a share of the relevant market which *could* give rise to a conclusion that it has the power to monopolize that market. At the conference, each side will present a list of the specific discovery proceeding in which it intends to engage.

B. Section 7 of the Clayton Act.

Section 7, 15 U.S.C. § 18, refers to the acquisition by one company of interests in other companies "where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly."

The defendant argues that the complaint based on Section 7 cannot be upheld, either because there is no private action for divestiture and treble damages, or because, even if there is such a private action, allegations of fact connecting the acquisitions to the lessening of competition are not present.

As to one ground, the defendant is clearly right; nowhere in the amended Count IV does any allegation set out the nexus between the acquisitions by the defendant and the alleged lessening of competition. In absence of such allegations, the part of Count IV depending upon the Clayton Act must be dismissed for failure to state a claim upon which relief could be granted. F.R.C.P. 12(b) (6). The plaintiff is granted fifteen days to amend its Count IV, if it so desires.

Because of the above disposition of the Clayton Act portion of amended Count IV, it is not appropriate to consider at this time whether a private cause of action for damages can be based upon Section 7. See Gottesman v. General Motors Corp., 221 F.Supp. 488 (S.D.N.Y. 1963), interlocutory appeal denied (2d Cir. 1964), cert. denied 379 U.S. 882, 85 S.Ct. 144, 13 L.Ed.2d 88 (10/19/64);

Highland Supply Corp. v. Reynolds Metals Co., 327 F.2d 725, 728, n. 3 (8th Cir. 1964).

For the reasons detailed above, I have on this day entered an order:

(1) Granting defendant's motion for summary judgment on Counts I and II; denying plaintiff's cross-motion for summary judgment on Counts I and II; and dismissing Counts I and II;

(2) Denying plaintiff's motion for summary judgment as to liability on Count V and defendant's motion for summary judgment on Count V.

(3) Denying defendant's motion for summary judgment on Count IV, but dismissing that part of Count IV depending upon the Clayton Act for failure to state a claim upon which relief could be granted; plaintiff is granted fifteen days to amend Count IV; and

(4) Setting a pre-trial conference with respect to discovery under Count IV for Friday, February 19, 1965, at 2:00 o'clock P.M.