**SMITH–VICTOR CORPORATION,**
Plaintiff,
v.
**SYLVANIA ELECTRIC PRODUCTS,**
**INC., Defendant.**
No. 61 C 331.

United States District Court
N. D. Illinois, E. D.
June 7, 1965.

---◆---

George E. Hale, Wilson & McIlvaine, Chicago, Ill., for plaintiff.

Thomas R. Mulroy, Hopkins, Sutter, Owen, Mulroy, Wentz & Davis, Chicago, Ill., for defendant.

DECKER, District Judge.

This suit is brought by Smith-Victor Corporation, plaintiff, against Sylvania Electric Products, Inc., defendant. The complaint bases plaintiff's right to recover damages upon the laws of unfair competition and trade libel, Section 43 of the Lanham Act relating to false advertising, 15 U.S.C. § 1125(a), and the anti-trust laws, specifically Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 7 of the Clayton Act, 15 U.S.C. § 18.

On February 1, 1965, 242 F.Supp. 302, this Court dismissed that portion of the amended complaint based upon unfair competition and trade libel and that portion of Count IV of the amended complaint based upon Section 7 of the Clayton Act. The facts of this lawsuit are set out fully in that opinion.

With leave of court, the plaintiff has filed an amendment to paragraph 26 of the amended complaint relating to Section 7 of the Clayton Act. The defendant's motion to dismiss amended Count IV, as amended, is now before the Court.

The amendment amplifies factors concerning the acquisitions of the assets or stock of certain other companies made by Sylvania. It is alleged that Sylvania secured research facilities, personnel, experienced salesmen, marketing facilities and advertising abilities as the result of its acquisitions. It is further alleged that Sylvania was acquired by General Telephone and Electronics Corporation (General), which now provides a "deep pocket" (see below) that enhances the competitive position of Sylvania. The amendment alleges that the acquisitions

by Sylvania, and the fact that it was acquired by General, give Sylvania overwhelming power in the relevant line of commerce, lighting equipment for the amateur motion picture photographer.

It does not appear from the complaint that Sylvania, General or any of the acquired companies were competing with the plaintiff in any way in the relevant line of commerce before the acquisitions alleged in the complaint. It does not appear that, with the exception of the Argus Camera Company (Argus), any of the acquired companies were engaged in any complementary line of commerce so that they would be purchasers from, or sellers to, the defendant.

Regarding Argus, the complaint alleges that the plaintiff formerly sold its lighting equipment to Argus for resale by Argus as part of a packaged combination of light and camera, and that, as a result of the merger, this market is now foreclosed to the plaintiff. The allegations regarding Argus do not state that competition in the relevant line of commerce may be substantially lessened, or even that the plaintiff has lost a significant amount of business due to this merger.

Finally, the complaint alleges that, prior to the entry of defendant into the relevant market, all of the competitors were small companies with limited resources, and that the defendant lessened competition by entering the relevant market because it was a large diversified company that has more resources, especially the "deep pocket," with which to compete.[1]

Defendant's motion to dismiss the amendment to the amended complaint raises again the question of whether facts sufficient to state a claim on which relief could be granted are alleged. These legal issues are presented by defendant's motion: (1) does the amended complaint, as amended, allege facts that show a sufficient causal connection between the acquisitions and the lessening of competition in the relevant market, and (2) can a private cause of action be based upon Section 7 of the Clayton Act?

Section 7 of the Clayton Act prohibits acquisitions of assets or stock by one company of another "where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly." The acquisitions which might violate Section 7 have been divided into categories for reference and discussion by the courts and by commentators. These are horizontal combinations, vertical combinations and conglomerate combinations.

A horizontal combination results when companies that are competitors in the relevant line of commerce are brought under one ownership or one corporate structure. Because one of the competitors in a relevant market has been eliminated, a finding that the proscribed result, potential or actual lessening of competition, may have occurred can be made with relative ease. Cases involving horizontal combinations include Brown Shoe Co. v. United States, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962), and United States v. Philadelphia National Bank, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963).

Vertical combinations, on the other hand, join complementary facilities by integrating different stages in the production or distribution process. Here, acquisition of a potential customer by a competitor in the relevant line of commerce forecloses competition for that customer's business; where the acquired customer was a significant factor in the market, the courts have found that competition may be substantially lessened.

---

[1]. Paragraph 26C of the amended complaint, as amended, alleges: "The emergence of a 'deep pocket' competitor (Sylvania) as aforestated in a relevant market where previously no competitor was very large or had the competitive resources available to Sylvania created the possibility, the power, and the likelihood that Sylvania would cause competition to be substantially lessened in the relevant market."

Cases involving vertical combinations include United States v. E. I. DuPont De Nemours & Co., 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957), and Brown Shoe Co. v. United States, supra.

■ The conglomerate combination involves all other combinations, that is, those in which the constituent companies were neither in the relationship of competitors nor of buyer and seller.[2] In these combinations, potential lessening of competition is more difficult to ascertain; nevertheless, certain situations have arisen in which the courts have been able to make a finding that competition may be substantially lessened. A recent Supreme Court case, F. T. C. v. Consolidated Foods Corp., 85 S.Ct. 1220, (Apr. 28, 1965), involved the acquisition of a company, which was a substantial manufacturer of dehydrated onion and garlic, by Consolidated Foods Corporation, a diversified company which sells foot at wholesale and retail, as well as owns food producing plants. The Federal Trade Commission found that Consolidated was able to use its purchasing power to induce reciprocity from those suppliers to Consolidated Foods Corporation which were also purchasers of dehydrated onions and garlic, —— F.T.C. ——. From this evidence, the conclusion that the ac-

quisition might have lessened competition in the dehydrated onion and garlic market was drawn.[3]

■ The farthest that any court has gone in applying Section 7 to a merger solely on the grounds that the resultant aggregation was larger than the competitors existing in the relevant line of commerce was Reynolds Metal Co. v. F. T. C., 114 U.S.App.D.C. 2, 309 F.2d 223 (1962). The theory there espoused, and that upon which the plaintiff rests its case, is called the "deep pocket" theory.[4] In essence, the rationale behind the deep pocket theory is that the company with a deep pocket from which to withdraw substantial financial or other backing is given a superior competitive advantage when the competitors in the relevant line of commerce are without the support of their own deep pockets. According to the Court in Reynolds Metal Co. v. F. T. C., supra, this deep pocket:

"* * * opened the possibility and power to sell at prices approximating cost or below and thus to undercut and ravage the less affluent competition. The Commission is not required to establish that the Reynolds' acqusition of Arrow did in fact have anti-competitive conse-

2. Conglomerate mergers were described by Congress as "those in which there is no discernable relationship in the nature of the business between the acquiring and the acquired firms." H.R.Rep.No. 1191, 81st Cong., 1st Sess. 11 (1949). Professor Turner defines conglomerate merger as a merger "between companies that neither compete directly nor stand in a buyer-seller relationship." Turner, Conglomerate Mergers and Section 7 of the Clayton Act, 78 Harv.L.Rev. 1313, 1314 (1965).

There may also be mixed conglomerate mergers, such as market extension mergers which join companies selling the same product in different geographical markets, or mergers through which the manufacturer of one product acquires a different but complementary product which allows him to offer a full line. See United States v. Ingersoll-Rand Co., 320 F.2d 509 (3d Cir. 1963), and Turner, supra, at 1315.

A variation involved a joint venture between two potential competitors; neither was in the geographical market before the joint venture, but either might have entered. See United States v. Penn-Olin Chemical Co., 378 U.S. 158, 84 S.Ct. 1710, 12 L.Ed.2d 775 (1964).

3. The F.T.C. found against Consolidated; this decision was reversed by the Court of Appeals for the 7th Circuit, 329 F.2d 623; on appeal, the Supreme Court reversed the Court of Appeals and reinstated the decision of the F.T.C.

4. The "deep pocket" theory is also known as the "rich parent" theory and the "wealth" theory. Note, Conglomerate Mergers: The Attack on Diversification, 25 U. of Pitt L.Rev. 683, 700-01 (1964); See also, Reynolds Metal Co. v. F.T.C., 114 U.S.App.D.C. 2, 309 F.2d 223, 229-30 (1962).

quences. It is sufficient if the Commission shows the acquisition had the capacity or potentiality to lessen competition. That such a potenial emerged from the combination of Reynolds and Arrow was enough to bring it within Sec. 7. But the Commission on substantial evidence has additionally provided us with a finding of *actual* anticompetitive effect, where as an apparent consequence of retroactive price reductions for Arrow foil after the acquisition of florist foil sales of 5 of Arrow's 7 competitors had by 1957 dropped from 14% to 47% below 1955 sales. Arrow's sales over the same period increased by 18.9%." 309 F.2d 223, 229–30.

In Reynolds Metal Co. v. F. T. C., supra, the defendant, a manufacturer of aluminum foil, purchased a converter of the foil. The converter processed the foil into decorative foil, which was then sold to florists. After the merger, the merged company pursued a course of business that involved price-cutting.

Although the Court could have invalidated the acquisition upon the principles applicable to vertical mergers, discussed above, it chose to do so merely on the ground that the competitors in the foil conversion industry were all small business units and that none of them could compete with the deep pocket provided the acquired company by Reynolds. From this finding, the Court concluded that the acquisition by Reynolds might substantially lessen competition. The Court's result is probably correct, in light of the evidence of the effect on competition caused by price-cutting, but the basis which it chose for its decision has been severely criticized. See Comment, Conglomerate Mergers under Section 7 of the Clayton Act, 72 Yale L.J. 1265 (1963).

A problem raised in Reynolds Metal Co. v. F. T. C., supra, and in the case at bar, is whether Congress intended to protect competitors without regard to the efficiency and potential saving to the consumer that acquisitions might bring.

Certainly, the plaintiff's argument that Sylvania is a large, "deep pocket" competitor which has entered a field where all of the other competitors are small, asks this Court to favor the competitor over competition. Some courts have gone so far as to state that Section 7 was intended only to protect the competitor. In United States v. Kennecott Copper Corp., 231 F.Supp. 95 (S.D.N.Y. 1964), the Court stated:

"It is no answer to say that such processes [economic forces leading to amalgamation and integration of large industries] are desirable from an economic standpoint, for Congress had said that the tendency is undesirable from a social standpoint, and we must enforce the law as Congress wrote it and as Congress intended that it be enforced." 231 F.Supp. 95, 103.

See also, Crown Zellerbach Corp. v. F. T. C., 296 F.2d 800, 825 (9th Cir. 1961), cert. denied, 370 U.S. 937, 82 S.Ct. 1581, 8 L.Ed.2d 807 (1962).

On this point, in Brown Shoe Co. v. United States, supra, the Supreme Court said:

"Taken as a whole, the legislative history illuminates congressional concern with the protection of *competition*, not *competitors*, and its desire to restrain mergers only to the extent that such combinations may tend to lessen competition." 370 U.S. 294, 320, 82 S.Ct. 1502, 1521.

At a later point in the opinion, the Court repeated the above statement, but then said:

"But we cannot fail to recognize Congress' desire to promote competition through the protection of viable, small, locally owned businesses. Congress appreciated that occasional higher costs and prices might result from the maintenance of fragmented industries and markets. It resolved these competing considerations in favor of decentralization. We must give effect to

that decision." 370 U.S. 294, 344, 82 S.Ct. 1502, 1534.

At the least, the Court's statements can be considered "ambivalent." Turner, supra, at 1324. As to whether Section 7 should be applied to a conglomerate merger merely because the size of the resultant combination promotes efficiency which might give it an advantage over smaller rivals, Turner has stated: "This position is not only bad economics but bad law." Turner, supra, at 1324. See also, Comment, Conglomerate Mergers under Section 7 of the Clayton Act, 72 Yale L.J. 1265, 1278–79 (1963).

■ If a conclusion can be drawn, it is that Section 7 is concerned with competitors only insofar as the preservation of a *number* of competitors in a specific line of commerce will promote competition. Merely alleging that an economically strong conglomeration is supporting a competitor in a line of commerce should be insufficient to invoke the sanctions of Section 7.

Plaintiff seeks to bring itself within the rule of Reynolds Metal Co. v. F. T. C., supra, by alleging that the relevant line of commerce was composed of small competitive units and that the plaintiff could not continue to operate when faced with the massive assets which the defendant could, and did, bring to bear in the industry. Thus, the plaintiff alleged that the defendant did lessen competition in the industry.

As indicated above, the question of whether a claim has been stated under Section 7 by the allegations of the complaint is a difficult question with a less than clear answer. But, because the amendment to the amended complaint fails to correct one fault of the amended complaint previously dismissed, it must also fail.

The amended complaint, as amended, merely alleges acquisitions by the defendant and a lessening of competition in the line of lighting equipment for the amateur motion picture photographers. However, it does not appear from the allegations of the complaint that ei-

ther the defendant or any of its constituent corporations engaged in the relevant line of commerce *prior to* the defendant's entry that took place *after* the acquisitions of which the plaintiff complains.

In all of the cases cited by the parties and the additional cases read by this Court, at least one of the companies involved in the merger or the acquisition was engaged in the relevant line of commerce at the time the merger or the acquisition was consummated. In Reynolds Metals Co. v. F. T. C., supra, the acquired company was one of the leading converters of aluminum foil before the merger. In Brown Shoe Co. v. United States, supra, the acquired company was engaged in both the vertical and the horizontal lines of commerce.

■ The effect of upholding the complaint would be to increase the scope of Section 7 greatly and might be to prevent competition from growing. Section 7 requires more than allegations that there were mergers or acquisitions and a lessening of competition in a relevant line of commerce; it requires that the lessening of competition result from the mergers or acquisitions. If the plaintiff's complaint were upheld, a competitor could ask the court to prevent any large company that had been formed, at least in part, through mergers or acquisitions from entering into competition in any new field that is comprised of small competitors. The entry of new competitors into lines of commerce is to be encouraged, according to the philosophy of Section 7, not proscribed.

■ Accepting the allegations of the amended complaint as true, it does not state a claim for damages resulting from a violation of Section 7 because it does not allege facts that, if proven, would show that the lessening of competition was the result of the prior mergers or acquisitions.

Regarding the acquisition of Argus by Sylvania, the complaint fails to allege facts that show that the foreclosure was substantial; therefore, a claim for

injury based upon Section 7 cannot be founded upon this acquisition.

Because of the above disposition of the defendant's motion, it is not necessary to determine whether there can be a private cause of action based upon Section 7.[5]

For the above reasons, the defendant's motion to dismiss Count IV of the amended complaint, as amended, insofar as it relates to Section 7 of the Clayton Act must be granted.

It is hereby ordered that Count IV of the amended complaint, as amended, insofar as it relates to Section 7 of the Clayton Act, be, and hereby is, dismissed.

---

**5.** See Julius M. Ames Co. v. Bostitch, Inc., 240 F.Supp. 521 (S.D.N.Y. Mar. 9, 1965), in which Judge McLean reviewed the law and determined that there is no reason to bar a private cause of action, provided proximate cause is proven. Cf.,

New Jersey Wood Finishing Co. v. Minnesota Mining & Mfg. Co., 332 F.2d 346 (3d Cir. 1964), affirmed, 85 S.Ct. 1473 (May 24, 1965); Castlegate, Inc. v. National Tea Co., 34 F.R.D. 221 (D.Colo. 1963).