**COASTAL ABSTRACT SERVICE, INC., Plaintiff–Appellee,**

v.

**FIRST AMERICAN TITLE INSURANCE COMPANY, John M. Hollenbeck, Defendants–Appellants.**

No. 96–56675.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1998.

Opinion Filed Dec. 28, 1998.

Opinion Withdrawn March 23, 1999.

Decided March 23, 1999.

Robert C. Braun, Rutan & Tucker, Costa Mesa, California, for the defendants-appellants.

Peter I. Livingston, Rosen & Livingston, New York, New York, for the plaintiff-appellee.

Before: CANBY, NOONAN and KLEINFELD, Circuit Judges.

## ORDER

The opinion filed December 28, 1998, is hereby withdrawn.

## OPINION

CANBY, Circuit Judge:

Coastal Abstract Services, Inc. ("Coastal") sued First American Title Insurance corp. ("First American") and one of its officers, John Hollenbeck, asserting three theories of liability: defamation, tortious interference with contract, and false advertising under the Lanham Act, 15 U.S.C. § 1125(a) (1998).[1] A jury found both de-

---

1. Jurisdiction in the district court was based both on a federal question, 28 U.S.C. § 1331, and on diversity of citizenship, 28 U.S.C.

fendants liable under all three theories. Liability under each theory was found to arise largely or entirely from three derogatory statements published by First American or Hollenbeck, or both. The jury assessed $1,425,000 in damages against Hollenbeck and $4,475,000 against First American. Both defendants now appeal.

We conclude that two of the three statements upon which liability was based were, as a matter of law, not actionable under the Lanham Act or state defamation law. We also conclude that the damages were excessive and that, because it is not possible to isolate the damages properly attributable to the one statement actionable under the Lanham Act and state defamation law, the award of damages on those claims must be reversed. Similarly, the damages for tortious interference with contract are likely to have been based in part on the jury's incorrect understanding that two of the statements violated the Lanham Act and state defamation law. We therefore reverse the award of damages on that claim and remand for a retrial of damages on all three claims.

## BACKGROUND

In 1991, Shearson Lehman Hutton Mortgage Corp. ("Shearson") began a home loan refinancing project that was designed to retain its current mortgagors by permitting them to take advantage of declining interest rates without leaving Shearson. Shearson engaged Coastal as an escrow agent to perform some of the tasks involved in this nationwide project. Shearson provided Coastal with the names and addresses of home owners who wanted to refinance with Shearson. Coastal then arranged for preliminary title searches and title insurance commitments for each relevant property. If Shearson was satisfied with the condition of the title, then it would prepare all of the necessary loan documents. Coastal then prepared a "HUD–1" Settlement Statement that set forth the various costs and disbursements associated with the new loan, such as recording fees and title insurance premiums. Coastal then arranged for the borrower to review and sign all of these various loan documents. Following an obligatory three-day waiting period, Shearson would issue a check to Coastal for the loan amount. Coastal then disbursed the funds, or "paid the bills," in accordance with the HUD statement. After Coastal made the necessary disbursements, it secured the title insurance policy from the selected insurer for delivery to Shearson. Shearson paid Coastal $350 plus certain expenses for each completed transaction.

Coastal, in turn, engaged First American to provide some of the services for the Shearson account. First American conducted the preliminary title searches and issued the title insurance policies when the loans closed. Because Coastal's office was in New York City, First American allowed borrowers to sign the loan documents at local First American offices located nationwide. First American also provided office space and services to a Coastal employee who was working in California, where most of the refinancing was occurring. The Coastal employee collected documents from Shearson and faxed them to Coastal in New York.

In February 1992, Max Alonzo and Karen Condo from First American met with the supervisor of Shearson's refinancing program, Karen Charlotta Near. According to Near, Alonzo stated that First American's office in San Bernardino, California, could no longer provide title insurance policies in connection with Shearson's refinancing program because Coastal was not licensed in California as an escrow company. Alonzo's licensure statement was the first of the three statements that were the focus of this litigation. Alonzo and Condo at the same time offered, on behalf of First American, to provide all of the services to Shearson that Coastal had been providing. Near related the conver-

§ 1332. Our jurisdiction arises under 28 U.S.C. § 1291.

sation to her superior at Shearson, Marty Foster. Foster subsequently curtailed the placement of California escrows with Coastal out of concern that Coastal was not properly licensed. Coastal associated with an escrow company licensed in California to assuage Foster's concerns, although it insisted that it was not required to obtain a California license. The placements resumed.

A second problem followed soon after the licensure problem. Shearson had not received title insurance policies in connection with several hundred of the refinanced loans. Shearson could not sell the loans on the secondary markets without the title insurance policies. Shearson reportedly declared that it would suspend new business with Coastal until the missing policies were delivered. Coastal representatives then contacted local First American offices to try to expedite the issuance of policies. As a result, Coastal obtained and delivered to Shearson 130 of the delinquent policies. Shearson then agreed to end its suspension of new business with Coastal.

First American assigned John Hollenbeck, a vice-president, to report on the cause for the delay in issuing title polices. Following his investigation, Hollenbeck reported to Near at Shearson that Coastal's failure to disburse the loan amounts, including the payments for title insurance premiums, created the delay in issuing the title policies. Hollenbeck's statement that Coastal was not "paying its bills" was the second of the three allegedly tortious statements. Hollenbeck also told Near that Coastal was too small to handle the volume of business that Shearson provided. The "too small" statement was the third supposedly actionable statement. Near later testified that Hollenbeck also solicited the Shearson account for First American.

According to Coastal, Hollenbeck repeatedly blamed Coastal for the delays in the ensuing months, even though his accu-

sations were not well founded. It further asserted that Hollenbeck thwarted Coastal's efforts to cure the delays by instructing local First American offices to send the policies to him, rather than to Coastal or directly to Shearson. Coastal maintained that it disbursed the loan amounts in a timely manner, and therefore it had not caused the delays in issuing the title policies.

Shearson eventually discontinued its association with both Coastal and First American. Coastal then sued First American and Hollenbeck in district court for false advertising under the Lanham Act, and for tortious interference with contract and defamation. The jury found both defendants liable under all three theories.[2] The jury awarded damages of $500,000 against Hollenbeck and $1,700,000 against First American on the Lanham Act claim; $500,000 against Hollenbeck and $1,500,000 against First American on the contract interference claim; and $425,000 against Hollenbeck and $1,275,000 against First American on the defamation claim. The district court denied the defendants' motions for judgment as a matter of law, new trial, and remittitur.

## DISCUSSION

### I. Actionability of Statements Under the Lanham Act and State Defamation Law

■ Liability under the relevant provision of the Lanham Act requires, among other things, a "false or misleading *representation of fact.*" 15 U.S.C. § 1125(a)(1)(emphasis added). Similarly, California defamation law requires that the offending statement "expressly or impliedly assert a fact that is susceptible to being proved false," and must be able reasonably to be "interpreted as stating actual facts." *Weller v. American Broadcasting Companies*, 232 Cal.App.3d 991, 1001, 283 Cal.Rptr. 644, 650 (1991). Two of the

---

2. Only First American, and not Hollenbeck, was found to have made the statement that

Coastal was operating illegally without a license in California.

three statements upon which the jury's verdict was based do not meet these requirements as a matter of law.

### "Too Small"

■ The statement that Coastal was "too small" to handle Shearson's business, along with the implication or statement that First American was large enough to handle that business, was exactly the kind of "puffery" that does not qualify as a statement of fact capable of being proved false. *See Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc.,* 911 F.2d 242, 245 (9th Cir.1990) (puffery, which a court may determine as a matter of law, is not actionable under Lanham Act). In *Cook,* we affirmed the district court's determination that the defendant's statement implying better service and lower rates than the competition was puffery because a reasonable consumer would not interpret the statement as a reliably factual claim. *Id.* at 246. We cited with approval the reasoning in *Smith–Victor Corp. v. Sylvania Elect. Products, Inc.,* 242 F.Supp. 302 (N.D.Ill.1965).

> In *Smith–Victor,* an advertiser's statement that its lamps were "far brighter than any lamp ever before offered for home movies" was ruled puffery. However, when the advertiser quantified numerically the alleged superior brightness with statements such as "35,000 candle power and 10–hour life," the court found a potential Lanham Act claim.

*Cook,* 911 F.2d at 246 (quoting *Smith–Victor,* 242 F.Supp. at 308–09); *see also Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1145 (9th Cir.1997).

In the present case, the defendants' assertion that Coastal was too small to handle Shearson's business was vague and subjective. It was not a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact. As a matter of law, it could not give rise to liability under either the Lanham Act or the California law of defamation.[3]

### "Not licensed in California"

■ California's Financial Code provides that "[i]t shall be unlawful for any person to engage in business as an escrow agent within this State except by means of a corporation duly organized for that purpose licensed by the commissioner as an escrow agent." Cal. Fin.Code § 17200 (West 1982). First American stated Coastal had no such license, and stated or clearly implied that § 17200 required Coastal to have one for its activities in connection with refinancing California property. The parties continue to dispute whether Coastal's activities fell within § 17200.[4] We need not resolve that question, however. Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact. *See Dial A Car, Inc. v. Transportation, Inc.,* 82 F.3d 484, 488–89 (D.C.Cir. 1996); *Sandoz Pharmaceuticals Corp. v. Richardson–Vicks, Inc.,* 902 F.2d 222, 230–32 (3d Cir.1990). Statements of opinion are not generally actionable under the Lanham Act. *See* 15 U.S.C. § 1125(a) (1998); *Groden v. Random House, Inc.,* 61 F.3d 1045, 1051 (2d Cir.1995). In *Dial A Car,* for example, the alleged misrepresen-

---

**3.** The district court concluded that the statement in context implied other facts that could be proved or disproved, in light of evidence concerning how many persons were required to service Shearson's account. The ultimate issue remains, however, whether Coastal was too small, and that standard is too much a matter of opinion for the evidence to prove or disprove it.

**4.** The jury determined to be false the statement that Coastal was operating illegally without a license in California. The facts of Coastal's operation were not disputed, however. The jury's fact-finding role does not extend, of course, to a determination whether California law, properly interpreted, applies to Coastal's conduct.

tation by two taxicab companies was that they were properly licensed to provide on-call service to corporate account customers. *Dial A Car*, 82 F.3d at 488. The D.C. Circuit upheld the district court's dismissal of that claim on the ground that the representations were not provably false because the D.C. Taxicab Commission had not yet interpreted the controlling municipal regulation. *Id.* at 488–89. Similarly, in *Sandoz Pharmaceuticals* the Third Circuit determined that the Lanham Act did not apply to a plaintiff's claim that a competitor had mislabeled an ingredient in its cough syrup because the controlling FDA regulations were unclear. *Sandoz*, 902 F.2d at 230–31. In the present case, the correct application of § 17200 was not knowable to the parties at the time that First American made the licensure statement. Thus, even if a California court ultimately concludes that § 17200 does not require that a company in Coastal's position obtain an escrow license, the licensure statement as a matter of law could not give rise to a Lanham Act claim.

■ It also could not support a state-law defamation claim. An opinion that does not convey a false factual implication is not defamatory under California law. *Kahn v. Bower*, 232 Cal.App.3d 1599, 1607, 284 Cal.Rptr. 244, 248 (1991). Thus the statement that Coastal was operating illegally without a California license might present a triable claim if in fact Coastal had a California license. There is no dispute, however, that Coastal had no California license (and was not affiliated with a California licensee) at the time First American made the statement. The only claim of falsity concerns the statement or suggestion that California's statute applied to the activities of Coastal, which was (and apparently still is) a matter of opinion. As a matter of law, the statement that Coastal

was operating without the necessary license in California did not constitute defamation.[5]

*"Not paying its bills"*

■ The statement that Coastal was not paying its bills (perhaps with the narrower implication that it was not paying in timely fashion), is quite a different matter. That statement is clearly one of fact, able to be proven true or false. Neither Hollenbeck nor First American contend otherwise. The statement is therefore actionable under the Lanham Act and the California law of defamation.

## II. Damages Under Lanham Act and State Defamation Law

■ The jury awarded damages of $500,000 against Hollenbeck and $1,700,-000 against First American on the Lanham Act claim. It awarded general damages of $425,000 against Hollenbeck and $1,275,-000 against First American on the defamation claim. These awards were based in substantial part on the two statements that we have found as a matter of law not to be actionable. The awards are not segregated in a manner that permits attribution of any portion of the damages to any particular statement. The first interruption of business of which Coastal complains, for example, was attributable to the statement that Coastal was operating without the necessary California license, but we have no way of knowing what part of the damages the jury imposed for that interruption. Nor do we know whether the jury imposed damages for the costs and losses arguably resulting from Coastal's affiliation with a California escrow agent, which occurred at least in part because of the statement regarding licensure. We are under the same disability with regard to

---

**5.** Counsel for First American and Hollenbeck raised in an equivocal fashion the question whether the licensure statement was opinion rather than fact. It is not surprising that the district court after judgment thought that the issue had been waived. We conclude, however, that the point was brought to the attention of the district court and the court decided it as a matter of law. We conclude that we may properly rule on the question, particularly in light of the fact that the damages issues must be retried in any event.

all of the other items of possible damage; we cannot discern how much may have been attributable to the two statements that were not actionable. In these circumstances, we must reverse the judgment and remand for a new trial on the damages resulting from the actionable conduct of Hollenbeck and First American. *See Maynard v. City of San Jose*, 37 F.3d 1396, 1406 (9th Cir.1994); *Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1352 (9th Cir.1985).[6]

## III. Tortious Interference with Contract

 On appeal, the parties have concentrated their arguments regarding tortious interference with contract on the same three statements discussed above, with emphasis on their defamatory character or lack of it. Yet "[w]rongfulness independent of the inducement to breach the contract is not an element of the tort of intentional interference with existing contractual relations." *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal.4th 26, 55–56, 77 Cal.Rptr.2d 709, 960 P.2d 513 (1998). The claim for tortious interference accordingly may survive even in the absence of statements violative of the Lanham Act and state defamation law. Moreover, there was evidence to support the claim in addition to the three statements discussed above-particularly evidence that First American delayed delivery of title policies. Thus the jury's finding of liability for tortious interference must be upheld.

 The jury's award of damages for tortious interference, however, may have been tainted by the erroneous determination that two of the statements were violative of the Lanham Act and state defamation law. The jury was instructed that tortious interference may be found in "con-

duct outside the realm of legitimate business transactions" because of the "method used." It was also instructed that interference with conduct may be justified, and that in deciding that issue the jury was to "balance the importance of the objective that the defendant sought to achieve by its interference against the importance of plaintiff's interest with which the defendant interfered," a determination to be made "keep[ing] in mind ... the nature of the defendant's conduct." There was no objection to these instructions, and they find support in *Quelimane Co.*, 19 Cal.4th at 56, 77 Cal.Rptr.2d 709, 960 P.2d 513.

We conclude that, in light of these instructions, the jury may well have found damages for tortious interference to flow from all three statements (as well as from other conduct of the defendants) *because* the statements were defamatory and violative of the Lanham Act. The finding that the statements were violative of the Lanham Act and state defamation law, incorrect as to two of the three statements, may have served as the basis for the jury's determination that those statements were "improper methods" or evidence of bad motive simply because of their unlawfulness. As we have pointed out above, discrete damages flowed in part from each statement. In light of the entire record, we are unable to say that the damages awards for tortious interference with contract, $500,000 against Hollenbeck and $1,500,000 against First American, were not improperly tainted by the error regarding two of the three statements in dispute. We therefore reverse the damages awards for tortious interference as well, and remand for a retrial of these damages as well as the others.

Before concluding, however, we must dispose of certain other contentions that Hollenbeck and First Interstate set forth

6. The damages awarded by the jury were also in excess of any amount supported by the record. Even by the calculation of Coastal's attorney, which improbably assumed that Coastal's fee of $350 was entirely profit and that the projected level of transactions would have lasted two years, the total damages on the Lanham Act and contract interference claims together could have amounted to little more than $2 million.

as complete defenses to some of the claims.

## IV. Lanham Act Claim Defenses

### A. McCarran–Ferguson Act

Hollenbeck and First American contended in their brief that the Lanham Act cannot apply to this case because of the McCarran–Ferguson Act. At oral argument, they withdrew this contention because of this court's decision in *Merchants Home Delivery Service, Inc. v. Frank B. Hall & Co.*, 50 F.3d 1486 (9th Cir.), *cert. denied*, 516 U.S. 964, 116 S.Ct. 418, 133 L.Ed.2d 335 (1995).[7] We therefore need not address this issue further.

### B. Competitive Injury

■ Hollenbeck contends that he cannot be liable to Coastal for false representations under the Lanham Act because he, as an individual, is not in competition with Coastal. It is true that in *Halicki v. United Artists Communications, Inc.*, 812 F.2d 1213, 1214 (9th Cir.1987), we held that a false representation about a film did not violate the Lanham Act and we pointed out that the party making the false representation was not in competition with the victim. But the crux of *Halicki* was that the victim, although suffering a form of injury to reputation, had not suffered a *competitive* injury. *See id.* at 1214–15. As we stated in *Waits v. Frito–Lay*, 978 F.2d 1093 (9th Cir.1992), *cert. denied*, 506 U.S. 1080, 113 S.Ct. 1047, 122 L.Ed.2d 355 (1993):

> The plaintiff's claim in *Halicki* was exclusively ... a "false advertising" claim, for it sought redress for a simple misrepresentation as to a product's quality, the content of a movie.... [W]here the misrepresentation simply concerns a product's qualities, it is actionable under section 43(a) only insofar as the Lanham Act's other purpose of preventing "unfair competition" is served.... In such

cases, *Halicki* counsels that a discernibly competitive injury must be alleged. *Id.* at 1109. In this case, there is no question that the injury to Coastal was competitive; Hollenbeck sought by his statements to divert business from Coastal to First American. The injury is the type that section 43(a) of the Lanham Act was intended to remedy.

■ "A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir.1985) (internal quotations omitted), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). The jury found that Hollenbeck himself made the statement that we have found actionable under the Lanham Act-the statement that Coastal was not paying its bills. Having made the statement as an officer of First American, Hollenbeck cannot "hide behind the corporation where he is an actual participant in the tort." *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir.1978). The jury could properly find Hollenbeck liable as an individual. *See Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 824 (9th Cir.1996).

### C. Commercial Advertising or Promotion

■ The Lanham Act proscribes misrepresentation of another's goods or services in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). Neither the Act's legislative history nor the Act itself defines "advertising" or "promotion." *See Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1383 (5th Cir.1996). The court in *Gordon & Breach Science Publishers v. American Inst. of Physics*, 859 F.Supp. 1521 (S.D.N.Y.1994), after reviewing the relevant case law, set forth four criteria for determining whether rep-

---

7. In withdrawing the contention, Hollenbeck and First American stated that they wished to preserve the issue for possible en banc review.

resentations constitute "commercial advertising or promotion." *Id.* at 1535–36. The court explained that:

> In order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Id.* In *Seven–Up*, the Fifth Circuit adopted these criteria as "accurate and sound," 86 F.3d at 1384, and we, too, adopt them. The disputed component in our case is (4): was the representation that Coastal was not paying its bills on time "sufficiently disseminated to the *relevant purchasing public* to constitute ... 'promotion' within *that industry.*" (Emphasis added).

 Coastal argued that, because the evidence showed that there were only two or possibly three institutions involved in the kind of nationwide refinancing operation conducted by Shearson, a representation to Shearson was a dissemination to a sufficient segment of the relevant purchasing public. The district court ruled that, if Coastal's view of the market were correct, then a representation could constitute a "promotion" even if made only to Shearson. In this ruling, we conclude that the district court was correct.

Where the potential purchasers in the market are relatively limited in number, even a single promotional presentation to an individual purchaser may be enough to trigger the protections of the Act.

*Seven–Up,* 86 F.3d at 1386. Here the district court, without objection, submitted to the jury the factual question of the nature of the market, by the following instruction:

> To establish the existence of a "commercial promotion" for purposes of its Lanham Act claims, plaintiff has the burden of establishing that the "relevant purchasing public" to which plaintiff was marketing its services consisted only of customers operating nationwide programs for the refinance of residential mortgages. If you find that the relevant purchasing public to which plaintiff was marketing its services included any institutional lender or other purchaser of escrow services, you must find against plaintiff on its Lanham Act claims.

So instructed, the jury found that the defendants' statements were made in a commercial promotion. The jury's finding was supported by substantial evidence. We therefore reject the contention of First American and Hollenbeck that there was no "promotion" as a matter of law.

## V. Common Interest Privilege

 California's common interest privilege, Cal. Civ.Code § 47(c), immunizes a person's statement to others on matters of common interest from liability in tort,[8] provided that the person did not act with malice. *See Institute of Athletic Motivation v. University of Ill.,* 114 Cal.App.3d 1, 7, 170 Cal.Rptr. 411 (Cal.Ct.App.1980). Whether the privilege exists in a particular case is a legal question for the court. *See id.* at 14 n. 5, 170 Cal.Rptr. 411 (citing Restatement (Second) Torts § 619, com. a (1977)). With regard to the only representation that is still of concern-the statement

---

**8.** Although privilege commonly arises in cases involving defamation, California has also applied its statutory privileges to other torts. *See Moore v. Brewster,* 96 F.3d 1240, 1246 (9th Cir.1996) (intentional infliction of emotional distress); *Copp v. Paxton,* 45 Cal. App.4th 829, 52 Cal.Rptr.2d 831, 845 (1996) (invasion of privacy); *Rothman v. Jackson,* 49 Cal.App.4th 1134, 57 Cal.Rptr.2d 284, 288 (1996) (intentional interference with existing and prospective economic relationships and intentional infliction of emotional distress).

that Coastal was "not paying its bills"-the district court agreed that the common interest privilege was available and the jury was instructed on it.

To overcome the common interest privilege, Coastal was required to show that First American's statements were made with actual malice. *See Lundquist v. Reusser,* 7 Cal.4th 1193, 1207, 31 Cal. Rptr.2d 776, 875 P.2d 1279, 1287–88 (Cal. 1994). California defines actual malice in this context as "a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person." *Id.* at 1285 (citations omitted). Malice may also be established by showing that defendants "lacked reasonable grounds to believe the statement true and therefore acted with reckless disregard for plaintiff's rights." *Cuenca v. Safeway San Francisco Employees Fed. Credit Union,* 180 Cal.App.3d 985, 997, 225 Cal.Rptr. 852 (Cal.Ct.App.1986) (citations omitted).

The issue of malice was submitted to the jury, without objection to the instructions, and the jury found that First American and Hollenbeck had published the statement in issue either knowing it was false or with reckless disregard as to its falsity and defamatory nature. It also found that both defendants lacked a good faith belief in the truth of the statement, or published it without reasonable grounds for believing it true, or were motivated by hatred or ill will or any other cause other than the desire to protect their own interests. These findings of malice were supported by substantial evidence, particularly of reckless disregard. Hollenbeck was substantially impeached, and admitted to failing to check the accuracy of the statement and to failing to correct it when confronted with conflicting evidence. We reject, therefore, the contention of First American and Hollenbeck that their statement was privileged as a matter of law.

## CONCLUSION

Two of the three statements by defendants upon which the jury verdicts were based were not actionable as a matter of law under the Lanham Act or the California law of defamation. The remaining statement-that Coastal was "not paying its bills"-was actionable under both laws. There was sufficient evidence to support the jury's finding of tortious interference with contract. The judgments of liability under all three claims are therefore affirmed.

The jury's award of damages for violation of the Lanham Act and the state law of defamation depended in part upon the two statements that were not actionable under those laws. This error also tainted in part the award of damages for tortious interference with contractual relations. The judgments with regard to damages are therefore reversed and the matter is remanded for retrial of all of the damages.

The parties will bear their own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**