**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

CZ SERVICES, INC., DBA CareZone
Pharmacy; CAREZONE PHARMACY,
LLC,

          Plaintiffs-Appellants,

  v.

EXPRESS SCRIPTS HOLDING
COMPANY; EXPRESS SCRIPTS, INC.,

          Defendants-Appellees.

No.   22-16408

D.C. No. 3:18-cv-04217-JD

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
James Donato, District Judge, Presiding

Argued and Submitted August 15, 2023
Anchorage, Alaska

Before:  MURGUIA, Chief Judge, and PAEZ and NGUYEN, Circuit Judges.

This case stems from statements that Defendants-Appellants Express Scripts,

Inc. and Express Scripts Holding Company (collectively "Express Scripts") made

concerning Plaintiffs-Appellants CZ Services, Inc. and its wholly owned

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

subsidiary, CareZone Pharmacy LLC (collectively the "CZ Pharmacies"). As relevant to this appeal, the CZ Pharmacies sued Express Scripts for defamation and brought a claim under Tennessee's "Any Willing Provider" ("AWP") statute. Before trial, the district court granted partial summary judgment on the AWP claim in favor of Express Scripts. During trial, the district court concluded that the CZ Pharmacies were limited-purpose public figures and therefore subject to a higher standard of proof on their defamation claim. The district court also concluded that the CZ Pharmacies were not entitled to a jury instruction explaining certain state licensure laws. After a seven-day trial, the jury found against the CZ Pharmacies. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Whether a plaintiff is a public figure is a legal question that we review de novo. *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 923–24 (9th Cir. 2022). Likewise, we review de novo a grant of summary judgment, *Pavoni v. Chrysler Grp., LLC*, 789 F.3d 1095, 1098 (9th Cir. 2015), whether the district court's jury instructions were legally correct and complete, *Clem v. Lomeli*, 566 F.3d 1177, 1180 (9th Cir. 2009), and the district court's interpretation of state law, *Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 982 (9th Cir. 2022).

1.      We have "articulated a three-prong test to determine whether an individual or entity is a limited-purpose public figure":

> [W]e consider whether (i) a public controversy existed when the statements were made, (ii) whether the alleged defamation is related

2

to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected itself into the controversy for the purpose of influencing the controversy's ultimate resolution.

*Planet Aid*, 44 F.4th at 925 (quoting *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 266 (9th Cir. 2013)). The parties agree that the first two prongs are met here.

As to the third prong, the CZ Pharmacies contend that they never "voluntarily injected" themselves into the public controversy. The CZ Pharmacies do not dispute that CareZone Inc., a technology company that provided an app-based delivery system for prescriptions, voluntarily thrust itself into the public controversy. Rather they contend that the actions of Jonathan Schwartz—the founder, sole owner, and president of the CZ Pharmacies and the co-founder of CareZone, Inc.—were "solely" on behalf of CareZone Inc. and not the CZ Pharmacies. This argument is unpersuasive. Although not every action by Mr. Schwartz can be imputed to the CZ Pharmacies, Mr. Schwartz's public relations actions allegedly on behalf of only CareZone Inc. directly served the CZ Pharmacies' interest in having Express Scripts rescind its termination decision. The CZ Pharmacies and CareZone Inc.'s corporate structure were closely intertwined, such that Mr. Schwartz—in his role as president of the CZ Pharmacies and CEO of CareZone Inc.—often appeared to be acting on behalf of both entities interchangeably. The district court therefore did not err in concluding that the CZ Pharmacies were limited-purpose public figures for this dispute because the

evidence shows that Mr. Schwartz, on behalf of the CZ Pharmacies, "engaged in a PR campaign" that reached millions of people to "get Express Scripts to reconsider its position" about terminating the CZ Pharmacies. *See Planet Aid*, 44 F.4th at 927 (concluding that the plaintiffs voluntarily injected themselves into a public controversy "[b]y actively seeking attention from the press, promoting themselves through social media, employing public relations staff, and soliciting donations and grants"); *Makaeff*, 715 F.3d at 269 (highlighting the plaintiff's "extensive advertising efforts [that] 'invited public attention, comment, and criticism.'" (quoting *Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 274 (3d Cir. 1980))).

2.      The CZ Pharmacies next argue that the district court erred by refusing to instruct the jury on relevant state pharmacy laws so that the jury could evaluate whether Express Scripts defamed them by accusing the CZ Pharmacies of not "operat[ing] legally" and being in "violation of state law." This court's decision in *Coastal Abstract Services Inc. v. First American Title Insurance Co.* squarely forecloses the CZ Pharmacies' argument. 173 F.3d 725 (9th Cir. 1999). There we held that without "a clear and unambiguous ruling from a court or agency of competent jurisdiction," a statement that an entity "was not properly licensed" to operate a business in California could not be defamatory. *Id.* at 730–31. We explained that "California defamation law requires that the offending statement 'expressly or impliedly assert a *fact* that is susceptible to being proved false,'" and

4

that "statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact." *Id.* (emphasis added). So, whether the relevant state pharmacy laws "allowed" the CZ Pharmacies to legally operate is an opinion statement, not a factual determination for jury, and is not actionable. *See id.* at 731 n.4 ("The jury's fact-finding role does not extend . . . to a determination [on] whether [state] law, properly interpreted, applies to [a person's] conduct.").

3.      Finally, the CZ Pharmacies argue that the district court erred when it rejected two theories of liability under the Tennessee AWP statute at summary judgment. Tennessee's AWP statute prohibits all "health insurance issuer[s]" and "managed health insurance issuer[s]" from "[d]eny[ing] any licensed pharmacy . . . the right to participate as a participating provider in any policy, contract or plan on the same terms and conditions as are offered to any other provider of pharmacy services under the policy, contract or plan." Tenn. Code Ann. § 56-7-2359(a)(1). So, to bring a claim under the AWP, the CZ Pharmacies must first show that Express Scripts, as a Pharmacy Benefits Manager ("PBM"), is either a "health insurance issuer" or a "managed health insurance issuer." *Id.*

The Tennessee AWP statute defines "managed health insurance issuer" as an entity that "[o]ffers health insurance coverage or benefits under a contract that restricts reimbursement for covered services to a defined network of providers,"

5

and is "regulated under" Title 56. Tenn. Code Ann. § 56-7-2359(d) (referencing § 56-32-128(a)). The Tennessee AWP statute does not, however, define the term "health insurance issuer." Another section within Title 56, Chapter 7, explains that PBMs can be "health insurance issuer[s]" and "managed health insurance issuer[s]," to the extent that they "provide[] health coverage to covered individuals." Tenn. Code Ann. § 56-7-3102(1)(A); *see id.* § 56-7-3102(5) (providing that the term "'pharmacy benefits manager' includes, but is not limited to, a health insurance issuer, [or] managed health insurance issuer"); *cf.* Tenn. Op. Att'y Gen., 2014 WL 3700676, at *3 (stating that whether PBMs fall under § 56-7-2359 depends on the context). At summary judgment, the CZ Pharmacies failed to point to any evidence that Express Scripts provides health insurance coverage.

In the alternative, the CZ Pharmacies argue that Express Scripts is subject to the Tennessee AWP statute "as the agent of its health-insurer clients, which *are* subject to that law." "Agency is the fiduciary relationship that arises when [a principal] manifests assent to [an agent] that the agent shall act on the principal's behalf and subject to the principal's conduct, and the agent manifests assent or otherwise consents so to act." *Am. Airlines, Inc. v. Mawhinney*, 904 F.3d 1114, 1124 (9th Cir. 2018) (quoting Restatement (Third) of Agency § 1.01 (2006)). Although Express Scripts contracts with health insurance issuers, none of the contracts show that the health insurance companies had "the right to substantially

6

control" Express Scripts' activities. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017).

**AFFIRMED.**