RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0071p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

FEDEX GROUND PACKAGE SYSTEM, INCORPORATED,

           *Plaintiff-Appellant*,

    *v.*

ROUTE CONSULTANT, INC.,

           *Defendant-Appellee*.

No. 23-5456

───────────────

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:22-cv-00656—Aleta Arthur Trauger, District Judge.

Argued: January 31, 2024

Decided and Filed: April 1, 2024

Before: SILER, MATHIS, and BLOOMEKATZ, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Curtis B. Krasik, K&L GATES LLP, Pittsburgh, Pennsylvania, for Appellant. Brian C. Neal, BURR & FORMAN LLP, Nashville, Tennessee, for Appellee. **ON BRIEF:** Curtis B. Krasik, Christopher M. Verdini, K&L GATES LLP, Pittsburgh, Pennsylvania, David R. Fine, K&L GATES LLP, Harrisburg, Pennsylvania, for Appellant. Brian C. Neal, Thomas K. Potter III, Garry K. Grooms, BURR & FORMAN LLP, Nashville, Tennessee, Andrew N. Grams, Paige I. Bernick, LEWIS THOMASON, Nashville, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

MATHIS, Circuit Judge. Companies are free to tout their own goods, services, and business dealings. And they can talk about the business activities of other companies. But the Lanham Act and the Tennessee Consumer Protection Act ("TCPA") prohibit a company from

falsely advertising or misrepresenting the goods, services, and activities of another company, or itself, if such false advertisement or misrepresentation damages the other company.  15 U.S.C. § 1125(a)(1)(B); Tenn. Code Ann. §§ 47-18-104(b)(8), -109(a)(1).

In this case, FedEx Ground Packaging Systems, Inc. ("FXG") claims that Route Consultant, Inc. publicized nine false or misleading statements about its business practices.  FXG claims that Route Consultant made the statements to foster discontent between FXG and its contractors, which would damage FXG and benefit Route Consultant.  So FXG sued Route Consultant under the Lanham Act's false-advertising provision and the TCPA's statutory-disparagement provision.  Because we agree with the district court that FXG failed to plausibly allege that Route Consultant made a single false or misleading statement, we affirm.

**I.**

FXG is a ground package delivery company.  But it does not deliver packages directly.  Instead, FXG relies on a network of approximately 4,500 independent services providers ("ISPs") to provide pickup and delivery services within agreed-upon neighborhood "routes," along with transportation service providers ("TSPs") for longer distance linehaul services.  ISPs and TSPs are collectively referred to as "contracted service providers" ("CSPs").

Spencer Patton owns several ISPs that work with FXG.  Mr. Patton also owns Route Consultant, a consultancy business for current CSPs and those that are looking to get into the business.  Route Consultant advises CSPs on "buying and selling FXG routes, ISP and TSP ownership and operations, and fleet strategy."  R. 1, PageID 2–3.  In addition to providing consultancy services, Route Consultant provides brokerage services for CSPs interested in selling their business or otherwise assigning their CSP contracts, and it provides instructional courses and programs for CSPs.  Route Consultant claims it is the "leader" in educating CSPs.  *Id.* at 3.  Route Consultant advertises its services through webinars and videos on its YouTube channel, on its website, on social media, and at annual conferences.

FXG asserts that Route Consultant, beginning in July 2022, launched a promotional campaign premised on a "fictionalized crisis" between FXG and its CSP network.  *Id.* at 9.  FXG believes the goal of Route Consultant's campaign was to influence CSPs to renegotiate their

contracts with FXG, which would in turn allow Route Consultant to position itself as the intermediary for the renegotiations. The campaign's linchpin was that the CSPs were "financially collapsing under the weight of . . . dramatic cost changes" resulting from global economic trends, and that these changes had "gone unaddressed by FXG in 2022." *Id.*

The problem, according to FXG, is that Route Consultant made false or misleading statements during its campaign. Route Consultant utilized three channels to spread the statements at issue. First, Route Consultant publicized an open Letter of Assurance to FXG which described the CSPs' alleged hardships and demanded "across-the-board" contract modifications. *Id.* at 10. Second, Patton posted several videos on Route Consultant's YouTube channel, which encouraged ISPs to renegotiate their contracts in light of the issues described in the Letter of Assurance. And third, Route Consultant issued multiple press releases which echoed these same themes. FXG claims the following nine statements from Route Consultant were false or misleading:

(1) after referencing the economic changes over the past 12 months, stating "there has been no financial adjustment in any capacity";

(2) after referencing two letters of concern that an anonymous group of FXG ISPs purportedly wrote earlier in 2022, stating that despite FXG's invitation for conversation "[i]n reality, those conversations did not result in financial adjustments for the CSPs who desperately needed it";

(3) the "average FXG business run by a CSP currently operates on profit margins below 0%";

(4) since [] Q4 of 2020, the industry has seen "a 15% pullback on the value of routes because . . . there is more economic uncertainty, you have rising interest rates, you have the stock market that is declined meaningfully";

(5) "the current CSP financial model is collapsing due to substantial increases in the cost of fuel, labor, and vehicles over the past 12 months";

(6) pointing to "soaring levels of CSP default rates as evidence of the current financial stress within the network";

(7) "I am calling for FXG to recognize that its independent contractors are in financial distress";

(8) "FXG has not addressed the financial needs of contractors as a result of fuel prices doubling, wage costs going up, and vehicle costs going up"; and

(9) "Almost all of the other contractors that had renegotiation requests were also denied."

*Id.* at 17–18.

In August 2022, FXG filed a complaint against Route Consultant, alleging these statements violated the Lanham Act and the TCPA. Route Consultant moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The district court dismissed both claims without prejudice and invited FXG to seek leave to file an amended complaint. *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 661 F. Supp. 3d 765, 786 (M.D. Tenn. 2023). FXG declined the district court's invitation and instead filed an appeal to this court.

**II.**

We review the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) de novo. *Lindke v. Tomlinson*, 31 F.4th 487, 495 (6th Cir. 2022). The rules require a party bringing a claim to provide "a short and plain statement" showing that it "is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under this pleading standard, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In this regard, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

**III.**

On appeal, FXG contends that the district court erred in dismissing its complaint against Route Consultant asserting a Lanham Act false-advertising claim and a TCPA statutory-disparagement claim. We address each argument in turn.

## A.

The Lanham Act creates a cause of action for false advertising. 15 U.S.C. § 1125(a)(1)(B); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014). Specifically, the Act prohibits individuals and companies from using "in commerce" any "false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of . . . another person's goods, services, or commercial activities[.]" 15 U.S.C. § 1125(a)(1)(B). To succeed on a false-advertising claim, a plaintiff must show: (1) the defendant made a false or misleading statement of fact about the plaintiff's product or service, (2) the statement actually deceived or tended to deceive a substantial portion of the message's intended audience, (3) the statement likely influenced the intended audience's purchasing decisions, (4) the defendant introduced the statement in interstate commerce, and (5) a causal connection between the defendant's statement and the plaintiff's injury.[1] *Campfield v. Safelite Grp., Inc.*, 91 F.4th 401, 411 (6th Cir. 2024) (citing *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999)). But what is a "statement of fact"? How about a "false" statement of fact? Or a "misleading" statement of fact? We answer these questions below.

In a false-advertising claim, only statements of fact are actionable. That is, the statement must assert a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496 (5th Cir. 2000) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999)). In other words, one can prove the statement true or false through "empirical verification." *Id.* (quoting *Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 679 (5th Cir. 1986)). Statements of opinion will not support a false-advertising claim. *Am. Council*, 185 F.3d at 614. This includes puffery, which courts define as an "unverifiable exaggeration to prove a point," *Louisiana-Pacific Corp. v. James*

---

[1]The plaintiff must also show that the defendant made the challenged statement "in commercial advertising or promotion." *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 798–801 (6th Cir. 2015). On appeal, the parties do not dispute that FXG satisfies this element of its false-advertising claim.

*Hardie Bldg. Prods., Inc.*, 928 F.3d 514, 519 (6th Cir. 2019); "[b]ald assertions of superiority," *Pizza Hut*, 227 F.3d at 496; and "[p]redictions of future events," *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 235 (5th Cir. 2014). Statements considered "rhetorical hyperbole" also do not qualify as statements of fact. *Cf. Seaton v. TripAdvisor LLC*, 728 F.3d 592, 597–98 (6th Cir. 2013) (explaining that "rhetorical hyperbole" is not defamatory because such statements "cannot be reasonably interpreted as stating actual facts about" an individual (citation omitted)); *see also Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 271 (6th Cir. 2018). That said, a statement's context can transform it from "unactionable" to "an empirically verifiable, factual claim." *Louisiana-Pacific*, 928 F.3d at 519.

A false-advertising claimant who seeks to recover damages by establishing that the defendant made a "false" statement of fact must plead and prove that the defendant communicated a "literally false" statement. *Wysong*, 889 F.3d at 270. A literally false statement "is bald-faced, egregious, undeniable, over the top." *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 513 (7th Cir. 2009). And it conveys "an unambiguously deceptive" meaning. *Wysong*, 889 F.3d at 270 (quotation omitted). We presume that a literally false statement deceived its intended audience, *Am. Council*, 185 F.3d at 614, making this "the preferred route for Lanham Act claimants," *Wysong*, 889 F.3d at 270. A statement is not literally false if it reasonably conveys different messages. *Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1185 (8th Cir. 2011) (citation omitted).

A claimant can also seek to recover on a false-advertising claim by showing that the defendant made a misleading statement of fact. A misleading statement is "literally true, yet deceptive, or too ambiguous to support a finding of literal falsity[.]" *Am. Council*, 185 F.3d at 614. The plaintiff must demonstrate that a "'significant portion' of reasonable consumers were *actually* deceived by the defendant's messaging." *Wysong*, 889 F.3d at 271 (quoting *Am. Council*, 185 F.3d at 616). Plaintiffs typically prove deception using consumer surveys. *Id.* However, in gauging the sufficiency of the complaint on a motion to dismiss and in the "absence of such surveys, we ask whether the facts in the complaint support a plausible inference that the challenged advertisements in fact misled a significant number of reasonable consumers." *Id.* This requires courts to consider how the statement would impact the reasonable consumer in the

defendant's intended audience. *Id.* at 271–72 (finding statements made on pet-food packaging not misleading because "reasonable consumers know that marketing involves some level of exaggeration"); *Pizza Hut*, 227 F.3d at 502; *see also Am. Council*, 185 F.3d at 616 ("Here, the intended audience is comprised of hospital administrators, insurance companies, and managed care organizations, a sophisticated group of professionals who presumably have familiarity with the issues involved[.]").

Relatedly, a complaint may not baldly assert that a challenged statement is false or misleading. It must explain *why* and *how* it is so. *See Wysong*, 889 F.3d at 271 (affirming dismissal because the complaint "did not explain *how* the photographs are supposed to have misled consumers in light of the whole context of the challenged advertisements"); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Azurity Pharms., Inc. v. Edge Pharma, LLC*, 45 F.4th 479, 498 (1st Cir. 2022) (affirming dismissal where the complaint "lack[ed] any specific explanation as to how" the pertinent statements "could mislead an audience"); *Int'l Code Council, Inc. v. UpCodes, Inc.*, 43 F.4th 46, 64 n.10 (2d Cir. 2022).

We do not review the challenged statement in isolation. Courts should consider the statement in its entirety and in its "full context." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998); *see also Wysong*, 889 F.3d at 270–71 (considering false or misleading statements as seen on food packaging); *Int'l Code Council*, 43 F.4th at 57 (citation omitted).

Below, we consider each of the statements at issue to determine whether FXG has stated a plausible false-advertising claim.

### Statement 1

after referencing the economic changes over the past 12 months, [Mr. Patton stated] "there has been no financial adjustment in any capacity" by FXG.

### Statement 2

after referencing two letters of concern that an anonymous group of FXG ISPs purportedly wrote earlier in 2022, [Mr. Patton stated]

that despite FXG's invitation for conversation "[i]n reality, those conversations did not result in financial adjustments for the CSPs who desperately needed it."

Statements (1) and (2) constitute statements of fact because a person can objectively verify whether FXG made *any* "financial adjustments." But we must determine if the complaint has plausibly alleged their literal falsity. On this point, the complaint alleges that these statements are literally false because "ISPs [] requested mid-contract renegotiations for only about 10% of their agreements in 2022; FXG has consented to approximately 40% of renegotiation requests since July 1, 2022; and over 90% of those renegotiations led to agreement on new terms that resulted in higher contractual payments to the ISPs." R. 1, PageID 18. Viewed in isolation, it seems FXG may have demonstrated the literal falsity of statements (1) and (2). But exploring the context of the statements reveals a mismatch between their intended meaning and the complaint's allegations.

FXG lifted statements (1) and (2) from Route Consultant's Letter of Assurance. In the letter, Route Consultant described the "flat, across-the-board" CSP pay increases that FXG made in 2020 "in order to overcome the extraordinary conditions of" the COVID-19 pandemic. R. 17-1, PageID 67. Route Consultant requested that FXG grant similar relief to address the "dramatic cost changes" that persisted in 2022. *Id.* But despite the "changes experienced over the past 12 months" being "magnitudes greater," FXG made "no financial adjustment in any capacity." *Id.* In support of this assertion, the Letter of Assurance referenced two letters of concern authored by an "anonymous group of [FXG] contractors" in 2022 that "did not result in financial adjustments for the CSPs who desperately needed it." *Id.* at 67–68.

Thus, when read in context, statements (1) and (2) did not accuse FXG of failing to make financial adjustments on an individualized basis. These statements instead charged FXG with failing to adjust its overall model in the wake of dramatic cost changes affecting every CSP. This is supported by the Letter of Assurance's reference to the remedial actions taken by FXG during the COVID-19 pandemic and the assertion that FXG refused to properly address the issues raised by the "group of FedEx contractors" who wrote the letters of concern. Consequently, the complaint's theory of literal falsity—that FXG granted certain renegotiation

requests to individual CSPs—does not plausibly demonstrate that statements (1) and (2) are "unambiguously deceptive." *Wysong*, 889 F.3d at 270. The surrounding context of the statements makes no mention of individual renegotiation requests being denied.

FXG argues that we should ignore this context and accept the complaint's allegations at face value. But as discussed above, we must consider the context of the statement in considering the alleged literal falsity of the statement. *See United Indus.*, 140 F.3d at 1180. And although FXG did not attach the Letter of Assurance to the complaint, FXG referred to it in the complaint and Route Consultant attached the letter to its motion to dismiss. Courts may consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

FXG also asserts that we cannot draw any inferences against it when evaluating whether it has sufficiently alleged literal falsity. Although it is true that, on a motion to dismiss, we must read the complaint in a light most favorable to the plaintiff and accept all factual allegations as true, only "reasonable inferences" are drawn in the plaintiff's favor. *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007). And under the circumstances present here, it would be unreasonable to divorce statements (1) and (2) from their context. *See Wysong*, 889 F.3d at 270 (finding lack of literal falsity because challenged statements, when viewed in their full context, were not unambiguously deceptive to reasonable consumers).

Without a showing of literal falsity, FXG must demonstrate that statements (1) and (2) are misleading. But the complaint contains no effort to make this showing. Nowhere in its allegations does FXG explain why or how statements (1) and (2) misled the CSPs. *See Wysong*, 889 F.3d at 271. And, in fact, FXG conceded at oral argument that it does not contend that these statements are misleading.

### Statement 3

the "average FXG business run by a CSP currently operates on profit margins below 0%."

### Statement 4

since [] Q4 of 2020, the industry has seen "a 15% pullback on the value of routes because . . . there is more economic uncertainty, you have rising interest rates, you have the stock market that [has] declined meaningfully."

As quantifiable assertions, statements (3) and (4) qualify as statements of fact. However, we agree with the district court that the complaint "never actually pleads" these statements are false or misleading. *See FedEx Ground*, 661 F. Supp. 3d at 784.

FXG pulled statement (3) from the end of an appendix contained in the Letter of Assurance, which details the cost pressures facing CSPs. That appendix indicates that the average CSP earns a 10% operating margin. But because of recent wage pressures, "fuel increases," and a rise in "repair and maintenance," the CSP profit margin fell "below 0%." R. 17-1, PageID 83. The complaint alleges that this statement is false or misleading because "an industry analyst recently analyzed the data for 100 ISP businesses currently for sale on Route Consultant's own website and calculated that 'these businesses generated an operating margin of 16.0%.'" R. 1, PageID 18. This plainly fails to address the crux of statement (3). That statement concerns CSPs, not ISPs. And "operating margin" (*i.e.*, revenue) is different from "profit margin," which refers to revenue minus expenses.

The complaint addresses statement (4) even less adequately. The complaint contains no discussion on the "pullback on the value of routes." To the extent it says anything, the complaint alleges that statement (4) is false because an "industry analyst . . . noted that 'these ISP businesses are being sold for an average multiple of 0.8x Sales and over 2x their fleet value.'" *Id.* But nowhere in the complaint does it explain how the sales value of an ISP at one point in time demonstrates whether there has been a "pullback" in a route's value over a period of time. Thus, like statement (3), we find that the complaint does not plausibly allege that statement (4) is false or misleading.

### Statement 5

"the current CSP financial model is collapsing due to substantial increases in the cost of fuel, labor, and vehicles over the past 12 months.

**Statement 6**

pointing to "soaring levels of CSP default rates as evidence of the current financial stress within the network."

**Statement 7**

"I am calling for [FXG] to recognize that its independent contractors are in financial distress."

Statement (5) does not qualify as a statement of fact. To be clear, the parties can measure whether there have been "increases in the cost of fuel, labor, and vehicles over the past 12 months." But the assertion that these costs are so "substantial" as to cause a "collapsing" CSP model can neither be measured nor reasonably interpreted as a statement of objective fact. As used in the statement, "collapsing" is a "loose, hyperbolic term" that conveys an "inherently subjective concept." *Cf. Seaton*, 728 F.3d at 598 (describing placement of plaintiff's hotel on TripAdvisor's "2011 Dirtiest Hotels" as "rhetorical hyperbole").

Statements (6) and (7) fare no better. Like statement (5), statement (6)'s claim that default rates are "soaring" is both immeasurable and hyperbolic. *See Soar*, OXFORD ENGLISH DICTIONARY[2] ("Of an amount, price, etc.: to rise or increase rapidly. Hence, of a commodity: to increase rapidly in price."). Even if we consider the statement to mean in context that the number of CSP defaults has risen at all, FXG has not pled that the statement is false, because its complaint refers only to the financial health of ISPs, not CSPs, and says nothing about defaults at all. And statement (7)'s claim that independent contractors are under "financial distress" is just as immeasurable as the "collapsing" CSP financial model.

FXG does not challenge the dismissal of statement (7), but it maintains that statements (5) and (6) are statements of fact. FXG specifically argues that statement (5) is measurable because that statement concerns "verifiable" past events, and the term "collapsing" has an "objective meaning": "to break down suddenly in strength or health and cease to function." D. 19 at pp.39–40 (quoting *Collapse*, WEBSTER'S II NEW COLLEGE DICTIONARY (1995). It also argues that statement (6) is measurable because "there is no evidence of increasing, much less

---

[2]https://doi.org/10.1093/OED/1135853933 (last visited Dec. 4, 2023).

soaring, levels of CSP default rates," and the term "soaring" means "[t]to rise suddenly above the normal or accustomed level." *Id.* at 22 (quoting *Soaring*, WEBSTER'S II NEW COLLEGE DICTIONARY (1995).

Neither argument persuades us. Regardless of whether Route Consultant based statement (5) on past or present events, the definition of "collapsing" sheds no light on how one could objectively verify that the CSP financial model has collapsed. That same rationale applies to the "soaring" CSP default rate levels. How can anyone measure that? And even if someone could, FXG has not alleged that the statement is untrue. Because statements (5), (6), and (7) are not statements of fact, they are not actionable.

### Statement 8

> FXG "has not addressed the financial needs of contractors as a result of fuel prices doubling, wage costs going up, and vehicle costs going up."

Statement (8) is a statement of fact. A reasonable person can determine whether FXG has taken action to "address[] the financial needs of contractors." But, based on the context of the statement, the complaint fails to plausibly allege that this statement is literally false or misleading.

Statement (8) came from a webinar posted on Route Consultant's YouTube channel in August 2022 entitled "2022 Expo Update & TALP Committee Nominations Info." During the webinar, the following exchange occurred:

> [CEO]: But so the question here, the unclaimed question, is I'm in the process of buying line haul routes and I've followed Route Consultant for months now, but with everything that's happening right now, letter of response, you know, from FedEx, all the pieces, [Mr. Patton], do you think it's still a good time to get into FedEx?
>
> . . .
>
> MR. PATTON: So the, the part that you have to remember is FedEx has no future without its contractor network. So this will get resolved one way or another. What I've been trying to be vocal about is let's not have this get resolved as a result of some massive contractor failure because FXG *has not*

*addressed the financial needs of contractors as a result of fuel prices doubling, wage costs going up, [and] vehicle costs going up.*

FedEx actually has precedent for addressing that in the past. So in 2020, in April of 2020 during COVID, FXG came out and did a 25 cent per stop increase for six months. And that was done to address all of the dislocations that were going on during COVID. And so that may be one of the ways that FXG could, could address this situation.

R. 17-6, PageID 200–02 (emphasis added).

Thus, like statements (1) and (2), the context of statement (8) demonstrates that Route Consultant accused FXG of failing to adjust its overall model in the wake of the cost increases sustained by the CSPs. And like statements (1) and (2), the complaint alleges that statement (8) is false or misleading because FXG has granted renegotiation requests to CSPs on an individualized basis. Because statement (8) suffers from the same mismatch problem as statements (1) and (2), the complaint does not plausibly allege the literal falsity or misleading nature of the statement.

### Statement 9

"Almost all of the other contractors that had renegotiation requests
were also denied."

Mr. Patton made statement (9) during the Q&A portion of the "2022 Expo Recap & Initial Address of FXG TSP Rate Announcement" webinar posted on Route Consultant's YouTube channel in August 2022:

[CEO]: [He] wants to know, so basically over the past year he said he's been negotiating his contract high variable and, you know, high on the e-commerce stop, and so those were built, you know, around nine percent projected growth projections and obviously he has not seen that. He said for his business they've actually been down nine percent year over year, and so he's just bleeding out and wanted to know if we have sort of any recommendations on, you know, he, he has not been approved for renegotiation, but any suggestions on how to try to, you know, push back to get a renegotiation on that or just kind of hold and wait for Express volume, just wants to know what thoughts you have there.

MR. PATTON: Yeah. You know, this is a narrative that thousands of contractors are, are finally speaking up and saying, you know, FXG publicly came out and called their contractors to renegotiate. I did a webinar on that about three or four

months ago that, just like what happened today when they told all the contractors to do that and then all of my renegotiation requests were denied, *and almost all of the other contractors that had renegotiation requests were also denied.* So that, that is something that your story is very consistent with a lot of other people there.

R. 17-7, PageID 257–58 (emphasis added).

Like statements (3) and (4), the complaint alleges that statement (9) is false because "FXG has consented to approximately 40% of renegotiation requests since July 1, 2022; and over 90% of those renegotiations led to an agreement on new terms that resulted in higher contractual payments." R. 1, PageID 18. Accepting this assertion as true, as we must, the allegation does not make statement (9) literally false because Route Consultant did not limit the statement to the period starting in July 2022. The context above indicates that Mr. Patton addressed the renegotiation requests made by the CSPs over the past year before he publicized the webinar. Furthermore, the statement is not "unambiguously deceptive." *Wysong*, 889 F.3d at 270. The complaint also fails to plausibly allege how statement (9) would mislead CSPs. Therefore, the complaint fails to allege that statement (9) is false or misleading.

\* \* \*

In sum, the complaint does not allege a single false or misleading statement of fact. Therefore, the district court did not err in dismissing FXG's false-advertising claim.

**B.**

Like the Lanham Act, the TCPA creates a cause of action for those harmed by the "unfair or deceptive act" of another. Tenn. Code Ann. § 47-18-109(a)(1), (b). And like the Lanham Act's false-advertising provision, the TCPA prohibits "[d]isparaging the goods, services or business of another by false or misleading representations of fact." *Id.* § 47-18-104(b)(8). Because of these similarities, we have described the TCPA's statutory-disparagement provision as a "state law analog" to the false-advertising provision. *Louisiana-Pacific*, 928 F.3d at 517. As such, we analyze TCPA statutory-disparagement claims the same way we analyze Lanham Act false-advertising claims. *See id.* at 517–20. Therefore, FXG's TCPA claim fails for the same reasons as its Lanham Act claim.

**IV.**

For the foregoing reasons, we **AFFIRM** the district court's judgment.